JOHNSON, Appellant, v. INDUSTRIAL COMMISSION and others, Respondents.

*June 6—June 27, 1961.*

For the appellant there were briefs by *Borg, McGill & Moodie* of Superior, attorneys, and *William L. McCusker* of Madison of counsel, and oral argument by *Mr. McCusker* and *Mr. P. J. McGill.*

For the respondent Industrial Commission the cause was argued by *Beatrice Lampert,* assistant attorney general, with whom on the brief were *John W. Reynolds,* attorney general, and *Mortimer Levitan,* assistant attorney general.

For the respondents Walco Engineering & Construction Company and Standard Accident Insurance Company there was a brief by *Hughes, Anderson & Davis,* and oral argument by *Harold Witkin,* all of Superior.

HALLOWS, J.   Our opinion in the first appeal apparently raised more questions than it settled. This court is now asked to decide whether the Industrial Commission erred and acted in excess of its power in making the disposition it did on the remand of the case. The appellant argues: (1) That our decision and mandate precluded the employer Walco and its insurer from relitigating the question of whether Johnson's disability after November 1, 1954, to September 18, 1956, was caused by traumatic neurosis, and (2) the Industrial Commission did not answer the specific questions set forth in the opinion as required by the mandate. Appellant further argues that there is no evidence to support the termination of the healing period on November 1, 1954, or of malingering prior to February, 1959. The attorney general, on this appeal, has shifted from the ground of his argument on the first appeal and now contends the Industrial Commission did not make a finding that Johnson sustained traumatic neurosis or hysteria although on the first appeal, the attorney general, in arguing to sustain the action of the Industrial Commission, took the position that a finding of hysteria was inherent in the finding of disability. It is further contended that this court could not and did not make any findings of fact and the present findings of the Industrial Commission are within the scope of the mandate and supported by the record.

As the case was presented to us on the first appeal, there was no express finding the appellant had traumatic neurosis or hysteria. The circuit court on review had taken the position the only basis on which permanent partial disability could be found by the commission was that the appellant had suffered traumatic neurosis or hysteria. Because there was no credible evidence that the disability was physiologically caused, the healing period of the original injury terminated on November 1, 1954, and if hysteria was the cause of the appellant's disability, it was a residual of the original

injury. The circuit court then reasoned, "There being no physical evidence present causing it [the traumatic neurosis], there could be no healing period for it." On appeal, the appellant took the position there was no credible evidence, if unexplained, which supported the termination of a healing period on November 1, 1954, because the applicant was suffering from traumatic neurosis.

The attorney general took the position the extent and duration of disability presented a question of fact and a recognition of hysteria was the only basis on which the commission could have awarded any compensation after November 1, 1954, because the doctors agreed there was no organic basis for Johnson's disability. In making this argument, the attorney general contended the commission found not that Johnson was malingering but that he was suffering from genuine hysteria, and the only difference between the commission's findings and Johnson's claim was the extent of the disability resulting from his hysteria. It was further stated in the attorney general's brief, "there could have been no other basis for an award than the acceptance of disability resulting from hysteria."

The Industrial Commission, however, made no express finding that the appellant Johnson had traumatic neurosis or hysteria but there was in the record evidence which would sustain the disability on that basis but no credible evidence upon which to base a finding of disability on any physiological or orthopedic basis. In our first opinion, we likewise took the view that any finding of permanent partial disability could only be sustained on the basis that traumatic neurosis existed and caused the limitation in the use of appellant's arm. However, we disagreed with the attorney general and the circuit court on the question of whether traumatic neurosis was a residual. On the evidence as then presented, we viewed traumatic neurosis of the hysteria type as being part of the injury and not a residual and, therefore, the healing

period did not terminate until the neurosis became stationary. This reasoning led us to agree with the appellant that the finding of a termination of the healing period on November 1, 1954, based on a physiological basis was erroneous as a matter of law and could not be sustained.

There are cases where mental illness itself is a residual and manifests itself only in the mental aspects of the applicant's personality, and in other cases such illness manifests itself in physical disability. However, in the latter case, it does not necessarily follow that the mental illness is a residual. In cases involving mental injury caused by accident or disease, either directly or as a part of the "process which the injury started," the Industrial Commission should find the nature of the injury, what caused it, and its healing period. It is not sufficient in such cases to find merely an injury and leave it to the reviewing court to determine whether the injury is mental or physical, or both. What the Industrial Commission considers to be ultimate facts in some cases may not furnish the reviewing court with sufficient findings to determine the correctness of the Industrial Commission's order. This is especially true where the nature of the injury and its cause are in dispute.

In this case, we probably should have sent back the case for more-adequate and satisfactory findings. However, on the assumption the Industrial Commission found evidence of traumatic neurosis, but failed to find when that condition became stationary or whether it had yet become so, we sent the case back for a determination of the following questions, (1) what was the end of the healing of the traumatic-neurosis period or is it ended, (2) the extent of the disability to the close of such healing period, and (3) if the healing period was over at the time of said hearing what, if any, is the permanent disability? On remand, the Industrial Commission expressly found Johnson suffered no neurosis, and again

found the healing period ended on November 1, 1954, and that Johnson suffered the same degree of permanent disability.

In carrying out the mandate of this court, the Industrial Commission would necessarily have to find the existence of traumatic neurosis, which we assumed it would, before it could determine what was the end of the healing period for traumatic neurosis, the extent of the disability during the healing period, and permanent disability, if any. The decision and mandate did not foreclose a determination of the question of the cause of Johnson's disability prior to September 18, 1956. True, as contended by the appellant, the issue was litigated, but no finding was made thereon by the Industrial Commission that traumatic neurosis existed except as such finding was assumed to be implicit in the finding of permanent disability. The lack of such a finding was the core of the commission's error. The appellant claims more for the decision than either the spirit or language thereof justifies. If the Industrial Commission had found traumatic neurosis existed but not as a residual, or if this court had power to make such a finding of fact and had done so, the appellant would be correct in his argument. There is nothing in *Gallagher v. Industrial Comm.* (1960), 9 Wis. (2d) 361, 101 N. W. (2d) 72, which supports the contention such a finding of traumatic neurosis was made. The questions of law decided by this court on the first appeal became the law of the case on remand. However, the same rule does not apply to findings of fact made or implied when they are set aside as being erroneous as a matter of law.

The appellant relies on *Monahan v. Fairbanks-Morse Mfg. Co.* (1912), 150 Wis. 512, 137 N. W. 748; *State ex rel. Littig v. Superior Court* (1939), 231 Wis. 58, 285 N. W. 419; *Fullerton Lumber Co. v. Torborg* (1957), 274 Wis. 478, 80 N. W. (2d) 461. But these cases are not in point.

This is a workmen's compensation case. The mandate set aside the entire order of the Industrial Commission and carried with it the erroneous finding of the healing period and the finding of permanent partial disability. Negligence cases, where the judgment is affirmed in part on one or two issues and remanded for retrial on other specific issues, are not analogous. In such cases, specific findings are affirmed and the erroneous findings are remanded for relitigation. Here, the determination of the healing period and the finding of permanent partial disability could not be sustained on the evidence. This is not to say what was decided as a question of law is not binding upon a new trial but, as pointed out in *Shaft v. Carey* (1902), 115 Wis. 155, 90 N. W. 427, the decision may become inapplicable if the facts change and the question does not arise.

Our opinion did not hold, nor did we decide, that Johnson was 100 per cent disabled to the date of the hearing of September 18, 1956. This argument of the appellant is based on the theory a finding of traumatic neurosis existed at the time of the hearing and the healing period is synonymous with 100 per cent permanent disability. A healing period is not determined by the percentage of disability but whether the "process which the injury started" has been arrested. *Knobbe v. Industrial Comm.* (1932), 208 Wis. 185, 242 N. W. 501. A particular injury may, or may not, result in temporary total disability during the healing period. We thought this point was clear from the language in our first opinion and when we asked for a determination of the extent of the disability to the close of the healing period. In our first opinion, we stated that the use of Johnson's arm was partially limited. The appellant claimed he was totally disabled from work. True, the evidence shows he did not work but that fact is not conclusive of the degree of disability.

This brings us to the consideration of the present findings on this appeal. The examiner found posttraumatic neurosis with conversion hysteria totally disabling the applicant and the appellant was entitled to further treatment. The Industrial Commission set aside the examiner's finding and order, and made the findings complained of. The correctness of the examiner's findings is not before us.

We have again reviewed the evidence submitted on the first appeal and examined the additional evidence taken on the remand. There is no point in summarizing it. The evidence on the question of whether the applicant sustained traumatic neurosis is in conflict. The testimony of Dr. Strewler is in direct conflict with Dr. Gowan's, and to the effect Johnson did not sustain traumatic neurosis but was malingering. Dr. Strewler's testimony concerning differences in the characteristics of malingering and of traumatic neurosis is convincing. The conflict in the testimony was resolved by the Industrial Commission in finding the applicant did not sustain any neurosis due to his injury of July 22, 1953, and there is sufficient credible evidence to sustain it. As we stated in the first opinion, either the appellant has a true case of traumatic neurosis or hysteria or he is malingering. This was a question of fact for the commission to decide.

The appellant makes a strenuous argument there is no evidence to support the termination of the healing period as of November 1, 1954, but his arguments go mainly to the credibility of Dr. Strewler's testimony and to the existence of traumatic neurosis. From the finding Johnson did not sustain any neurosis, it follows that the healing period on a physical basis terminated November 1, 1954, because the condition of his arm then became stationary. There is credible evidence in the record which sustains this finding.

The Industrial Commission again found that as a result of the physical injury which Johnson sustained, he had a permanent disability of the arm at the shoulder equal to 10 per cent. There is testimony of medical witnesses of varying degrees of disability of the arm based upon different reasons: Dr. Strewler, a psychiatrist, 2 per cent based upon disuse of the arm; Dr. Gaenslen, 5 per cent not based on any orthopedic basis; Dr. Houkom, 20 per cent on a cause which needed valuation but other than orthopedic; and Dr. Gowan, a psychiatrist, who considered Johnson was totally disabled from work but gave no specific opinion on the degree of disability of the arm. As we view the evidence, there is no positive or sufficient credible evidence the disability had any physiological basis, and since traumatic neurosis cannot be the basis of such a disability, either as the injury or as a residual thereof, the finding that permanent partial disability resulted from Johnson's physical injury is not sustained by any evidence. In making such finding, the Industrial Commission acted in excess of its powers.

The Industrial Commission stated in its memorandum the applicant grossly exaggerated his disability and complaints and he malingered. The finding Johnson did not sustain a neurosis is inconsistent with the granting of any permanent partial disability. It may be that the Industrial Commission's theory of the evidence is that the malingering of Johnson and the gross exaggerations only applied to disability in excess of 10 per cent. However, the findings of the Industrial Commission are not so restricted and if the Industrial Commission so intended, it should have made its findings specific and consistent. We refuse to speculate on what the unsatisfactory findings and short memorandum really represent in the mind of the Industrial Commission. In our view of the case, the finding of no neurosis and the absence of evidence of any other basis, on which a disability could be predicated,

make it impossible to affirm any degree of disability in Johnson's arm. This is not a question of disagreement in the medical testimony on the degree of disability but of the legitimate cause of any disability. An award of the Industrial Commission must be based on some credible evidence. As stated in the dissent by Mr. Justice BROADFOOT to our first opinion (p. 594), "A study of the record leaves a grave doubt in my mind that claimant's neurosis was a result of his earlier injury. If the commission entertained the same doubt then it was its duty to deny the additional compensation requested."

However, in this case it is an academic question. The appellant has received an award on the basis of permanent partial disability for a lesser amount of money than he has already received through voluntary payment by the employer and its insurer, who have waived any rights for reimbursement for overpayment. The present order of the Industrial Commission, although erroneous in this respect, should, therefore, be affirmed.

*By the Court.*—Judgment affirmed.