BURKS, Appellant, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and others, Respondents.

*No. 148.  Argued October 29, 1969.—Decided November 25, 1969.*
(Also reported in 172 N. W. 2d 27.)

For the appellant there was a brief and oral argument by *Walter J. Steininger* of Milwaukee.

For the respondent Department of Industry, Labor & Human Relations the cause was argued by *James P. Altman,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HEFFERNAN, J. There is but one question presented on this appeal, and that is whether the department's findings are supported by any credible evidence. If there is credible evidence to sustain those findings, irrespective of whether there is evidence that might lead to an opposite conclusion, we are obliged to affirm. As this court said in *Unruh v. Industrial Comm.* (1959), 8 Wis. 2d 394, 398, 99 N. W. 2d 182:

"The question is not whether there is credible evidence in the record to sustain a finding the commission did not make, but whether there is any credible evidence to sustain the finding the commission did make."

In the recent case of *R. T. Madden, Inc. v. ILHR Department* (1969), 43 Wis. 2d 528, 169 N. W. 2d 73, we reaffirmed the test as properly being whether there is any credible evidence. We explained that test by pointing out:

"The assumption in that test is, of course, that the evidence is relevant, that it is evidentiary in nature and not a conclusion of law, and that it is not so completely discredited by other evidence that a court could find it incredible as a matter of law." (p. 547.)

The record in this case poses contradictory evidence. Elsie Burks testified that she was symptom-free prior to the accident and has since that date been disabled. Her doctor's report supported her claim that she was permanently disabled as a result of the work-related injury. On the other hand, Dr. Shapiro concluded that Elsie Burks sustained an injury, that the aggravation to her prior-existing back injury was temporary in nature, and that her present disability is the result of a long-standing degenerative condition and is unrelated to the accident and was not aggravated by it. This state of the record produces a simple conflict of evidence, and it is for the department to determine what evidence should

be believed. It is obvious that the testimony of Dr. Shapiro was believed and the testimony of Elsie Burks and her examining physician was rejected. Under these circumstances we are obliged to conclude that there was credible evidence to sustain the findings.

Counsel for Elsie Burks, however, has eloquently and persuasively argued that, nonetheless, Dr. Shapiro's testimony is incredible as a matter of law and must, therefore, be disregarded. He bases his conclusion on the fact, which the record abundantly supports, that Dr. Shapiro at the time he reached his conclusion was unaware of Elsie Burks' near-perfect work record and the fact that she had, for a period of almost three and one-half years, been doing a considerable amount of lifting with no work interruptions. Nevertheless, even when confronted with the evidence that the applicant had been lifting heavy loads of laundry regularly for three and one-half years prior to the accident of March 22, he remained firm in his conclusion that she had suffered no permanent injury and that the preexisting degeneration of the back had not been permanently aggravated by the accident. He was ably and exhaustively cross-examined by plaintiff's attorney but remained unshaken in his conclusion. In addition, the trial examiner questioned him at length on this point, and Dr. Shapiro concluded that, although Elsie Burks had sustained a sprain, there was nothing more than a temporary disability occasioned by the sprain and that her present condition of disability was not the result of the work injury.

We have pointed out in *Johnston v. Industrial Comm.* (1958), 3 Wis. 2d 173, 87 N. W. 2d 822, that, where there are inconsistencies or conflicts in medical testimony, it is the function of the department, and not of the courts, to reconcile those inconsistencies. Under this state of the record, we cannot conclude that Dr. Shapiro's testimony should be disregarded as being incredible as a matter of law.

The applicant contends, however, that in our recent case of *Lewellyn v. ILHR Department* (1968), 38 Wis. 2d 43, 155 N. W. 2d 678, the applicant is entitled as a matter of law to recover. This conclusion is based on the statement of this court in *Lewellyn* at pages 58, 59:

"If there is a definite 'breakage' (a letting go, a structural change etc., as described by Professor Larson), while the employee is engaged in usual or normal activity on the job, and there is a relationship between the breakage and the effort exerted or motion involved, the injury is compensable regardless of whether or not the employee's condition was preexisting and regardless of whether or not there is evidence of prior trouble. *Brown v. Industrial Comm., supra,* and *Indianhead Truck Lines v. Industrial Comm., supra.*"

Applicant's attorney, following oral argument, supplied the court with a medical definition of sprain. That definition applies the term, "sprain," when a muscle or a ligament has actually been torn as the result of an overstretching. He contends that this is consistent with the concept of breakage as adopted in *Lewellyn* and taken from Professor Larson's treatise of workmen's compensation. Larson defines breakage as occurring when:

". . . exertion leads to something actually breaking, herniating, or letting go, with an obvious sudden mechanical or structural change in the body . . . ." 1A Larson, *Law of Workmen's Compensation,* p. 521, sec. 38.20.

It should also be remembered, however, that the "breakage" concept is simply an evidentiary rule that is used to test the assertion of an accident when the injury is the result of an internal accident rather than a falling or slipping or some untoward event. Breakage is merely evidence of an accident.

In this case we need not determine whether a sprain constitutes a breakage as defined in Larson and as followed in *Lewellyn*. Here there is no dispute that a sprain or breakage—an accident—did occur. The problem from

the applicant's point of view is that the testimony of Dr. Shapiro which was believed led to the conclusion that the sprain or breakage did not permanently aggravate the preexisting disability nor did it contribute to her present problem. The applicant's problem is a simple one of causation, and cause has not been proved.

The examiner and the department gave no credence to Dr. Bernstein's contention that the sprain or breakage resulted in more than temporary disability. Inasmuch as the evidence relied upon by the department is not incredible as a matter of law, we will not substitute our judgment for the finding of the department when its findings are supported by credible evidence.

*By the Court.*—Judgment affirmed.