VALADZIC, Plaintiff-Respondent, v. BRIGGS & STRATTON CORPORATION, Defendant-Appellant: DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Defendant-Respondent.

Supreme Court

*No. 77–072. Submitted on briefs September 12, 1979.—Decided December 4, 1979.*
(Also reported in 286 N.W.2d 540.)

584

For the appellant the cause was submitted on the briefs of *Peter W. Bunde, Thomas Armstrong* and *Quarles & Brady* of Milwaukee.

For the Department of Industry, Labor & Human Relations the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Beatrice Lampert,* assistant attorney general.

For Rodojka Valadzic, the cause was submitted on the brief of *Eisenberg & Kletzke* of Milwaukee.

SHIRLEY S. ABRAHAMSON, J.   The circuit court reversed an order of the Department of Industry, Labor and Human Relations (Department) granting worker's compensation to Rodojka Valadzic, an employee, for temporary total disability and denying compensation for permanent disability. The circuit court remanded the case to the Department for the taking of additional evidence as to the healing period for a conversion reaction (a mental injury). Briggs & Stratton Corporation, the employer, appealed to this court, and we reverse the order of the circuit court.

Mrs. Valadzic was employed by Briggs & Stratton Corporation to affix labels on small engines which moved past her on a conveyor system. It is undisputed that on August 14, 1973, she was injured while she was at work when some large pieces of cardboard fell on her head, neck, and shoulders. She was hospitalized from August 14, 1973 through August 22, 1973 at St. Joseph's Hospital in Milwaukee. After her release from the hospital she did not return to work until January 15, 1974. She worked from January 15, 1974, until April 2, 1974, when she was admitted to Nicolet Hospital, Milwaukee, where she remained until April 24, 1974. Her complaints were

of pain in her head, neck, right shoulder and arm, and dizzy spells. Acting on the advice of Dr. Verdone, her treating physician at Nicolet Hospital, she went to the Mayo Clinic in December, 1974, January, 1975 and May, 1975, for further evaluation and treatment.

A hearing was held on September 2 and October 20, 1975. The hearing examiner made the following findings of fact:

". . . that on August 14, 1973 the applicant [Mrs. Valadzic] sustained an injury caused by an accident arising out of the applicant's employment by the respondent; that at the time of the injury the applicant was performing services incidental to her employment by the respondent; that as a result of the injury of August 14, 1973 the applicant sustained temporary total disability from August 14, 1973 to January 15, 1974 and from April 2, 1974 to January 31, 1975 at which time the applicant was discharged from the Mayo Clinic; . . . that as a result of the injury of August 14, 1973 the applicant sustained a mild cerebral concussion and a para cervical muscular strain; that when the applicant was examined at the Mayo Clinic in January of 1975 no objective evidence of brachial plexus injury was found and there was no evidence of any neurological damage; that the applicant did sustain a conversion reaction as a result of the injury of August 14, 1973, however, that conversion reaction did not result in permanent disability; that as a result of the injury of August 14, 1973 the applicant did not sustain any permanent partial disability . . . ."

The hearing examiner's findings can be summarized as follows: After the accident there was evidence that Mrs. Valadzic suffered physical injury. There was no evidence of physical injury as of January, 1975. As a result of her injury, Mrs. Valadzic sustained two periods of temporary total disability. One of these periods lasted from the date of the accident until January 14, 1974. The second period began on April 2, 1974 and lasted until

January 31, 1975. Mrs. Valadzic sustained a conversion reaction which did not result in permanent disability. Mrs. Valadzic did not sustain any permanent partial disability.

The Department adopted the findings and order rendered by the hearing examiner.[1]

The first issue to which we must turn is whether the Department was required to make a specific finding as to the healing period for the conversion reaction suffered by Mrs. Valadzic.

A conversion reaction has been defined as "a mental defense mechanism whereby unconscious emotional conflict is transformed into physical disability." *Gallagher v. Industrial Comm.*, 9 Wis.2d 361, 366, 101 N.W.2d 72 (1960), *quoting from Blakiston's New Gould Medical Dictionary*, pp. 280, 1012 (2d ed., 1956). *See also, Stedman's Medical Dictionary Unabridged Lawyer's Ed.* 362 (21st ed., 1966).[2]

---

[1] The requirement that the Department make findings of facts is imposed by sec. 102.18(1)(b), Stats., which provides:

"102.18 **Findings, orders and awards.** (1) . . .

"(b) After final hearing the department shall make and file its findings upon the ultimate facts involved in the controversy, and its order, which shall state its determination as to the rights of the parties. Pending the final determination of any controversy before it, the department may in its discretion after any hearing make interlocutory findings, orders and awards which may be enforced in the same manner as final awards. . . ."

*See Universal Foundry Co. v. ILHR Dept.*, 82 Wis.2d 479, 483, 263 N.W.2d 172 (1978).

The Commission made two modifications to the findings of the examiner which are not relevant to this appeal.

[2] No party raises on appeal the question whether the mental injury involved in the case at bar is compensable under worker's compensation, and we do not decide this question. Briggs & Stratton concedes that both physical and mental injuries are normally compensable under the worker's compensation statute. Briggs & Stratton, citing *Gallagher v. Industrial Comm.*, 9 Wis.2d 361, 101 N.W.2d 72 (1968), points out that this court has specifi-

The circuit court, relying on *Johnson v. Industrial Comm. (Johnson I)*, 5 Wis.2d 584, 93 N.W.2d 439 (1958), and *Johnson v. Industrial Comm. (Johnson II)*, 14 Wis.2d 211, 109 N.W.2d 666 (1961), concluded that the Department's finding that no permanent partial disability resulted from the conversion reaction was defective, because the Department, having found that Mrs. Valadzic had suffered a conversion reaction, failed to determine specifically the healing period for that injury. Without establishing the healing period for mental injury, reasoned the circuit court, the Department could not determine that Mrs. Valadzic suffered no permanent disability.

In this case the healing period or period of recovery is the same as the duration of temporary total disability. Professor Larson states that "The current tendency is to abandon the classical terminology of temporary total [disability] and refer instead to the 'healing period' or 'the period of recovery'." The healing period (the duration of temporary disability) ends when the claimant has reached his maximum improvement from the injuries. At that time residual permanent disability, if any, must be determined. 2 Larson, *The Law of Workmen's Compensation*, sec. 57.10, p. 10–6, n. 6 (1976).

cally held that traumatic neurosis is compensable "mental injury," *Johnson I* and *Johnson II*, but that this court has not determined whether conversion reaction is compensable.

For a discussion of compensability of mental injury, see 1B Larson, *The Law of Workmen's Compensation* sec. 42.22 (1979); Larson, *Mental & Nervous Injury in Workmen's Compensation*, 73 Vand. L. Rev. 1243 (1970); Comment, *Workmen's Compensation—Compensability of Mental Injury*, 21 N.Y.L. Forum 465 (1976); Comment, *Workmen's Compensation: Compensability of Psychological Disability Precipitated by Psychological Trauma*, 1975 Wash. U.L.Q. 1128 (1975); Comment, *Workmen's Compensation Awards for Psychoneurotic Reactions*, 70 Yale L.J. 1129 (1961).

Applying these concepts to mental injury, this court in *Johnson I*, 5 Wis.2d at 593, defined the healing period relating to mental injury as follows:

"The healing period applied to mental harm . . . would be the period prior to the time when the mental condition becomes stationary and would require a postponement of fixing permanent disability, if any, to the time it becomes apparent that the mental condition, to a medical certainty, will become no better or worse."

*Accord, Swiss Colony, Inc. v. ILHR Dept.*, 72 Wis.2d 46, 59, 240 N.W.2d 128 (1976).

We have recognized the importance of the Department's making findings which separately deal with mental and physical injury:

"In cases involving mental injury caused by accident or disease, either directly or as a part of the 'process which the injury started,' the Industrial Commission should find the nature of the injury, what caused it, and its healing period. It is not sufficient in such cases to find merely an injury and leave it to the reviewing court to determine whether the injury is mental or physical, or both. What the Industrial Commission considers to be ultimate facts in some cases may not furnish the reviewing court with sufficient findings to determine the correctness of the Industrial Commission's order. This is especially true where the nature of the injury and its cause are in dispute." *Johnson II, supra,* 14 Wis.2d at 216.

The *Johnson Cases*, however, do not support the circuit court's conclusion that the Department must always explicitly make a finding of the termination of the healing period of traumatic neurosis. In *Johnson I* there was direct, credible and uncontroverted testimony that the worker's mental injury had not yet stabilized and could be improved or cured through psychiatric treatment. The Department's finding of a termination of

the healing period arrived at solely on a physiological basis was erroneous as a matter of law and could not be sustained. Accordingly in the *Johnson Cases* we held that where the Department finds that a claimant has sustained both physical and mental injury and the undisputed medical testimony demonstrates that the mental injury is capable of being improved or cured through psychiatric treatment, the Department cannot determine the end of the hearing period for the mental injury solely on a physiological basis. The Department must, under those circumstances, determine the end of the healing period for the mental injury separately from the end of the healing period for the physical injury.

In cases subsequent to *Johnson I*, this court has emphasized that the *Johnson* rationale is confined to cases where there is medical testimony that the mental injury may be cured or improved by psychiatric therapy. *Gallagher v. Industrial Commission*, 9 Wis.2d 361, 367, 101 N.W.2d 72 (1960); *Mednicoff v. ILHR Dept.*, 54 Wis.2d 7, 21, 194 N.W.2d 670 (1972).

In the case at bar the accident had occurred in August 1973; the hearing was held in the fall of 1975. Mrs. Valadzic had been treated extensively for her condition. There was no testimony that Mrs. Valadzic's condition could be aided or cured by psychiatric therapy. There was no testimony that Mrs. Valadzic's condition had not stabilized permitting an appraisal of permanent disability.

Because there was a complete absence of testimony that her mental injury could be improved or cured by psychiatric treatment, we conclude that in the instant case the Department's failure to find specifically the end of the healing period for the mental injury does not in and of itself render the Department's findings insuf-

ficient or defective requiring reconsideration by the Department. *Gallagher v. Industrial Commission,* 9 Wis.2d 361, 367, 101 N.W.2d 72 (1960); *Swiss Colony, Inc. v. ILHR Dept.,* 72 Wis.2d 46, 59, 240 N.W.2d 128 (1976).

Although the Department's findings in the case at bar might be improved upon, we conclude that they are not fatally ambiguous, and they are adequate for purposes of judicial review. The findings made by the Department enumerate the existence of the disability, its cause, its extent and duration. *Reich v. ILHR Dept.,* 40 Wis.2d 244, 262, 161 N.W.2d 878 (1968).

A general finding by the Department implies all facts necessary to support it. A finding not explicitly made may be inferred from other properly made findings and from findings which the Department failed to make, if there is evidence (or inferences which can be drawn from the evidence) which would support such findings. *Christnovich v. Industrial Comm.,* 257 Wis. 235, 237, 43 N.W. 2d 21 (1950); *Gallenberg v. Industrial Comm.,* 269 Wis. 40, 43, 68 N.W.2d 550 (1955); *VandeZande v. ILHR Dept.,* 70 Wis.2d 1086, 1097, 236 N.W.2d 255 (1975).

Both parties appear to agree that implicit in the Department's express finding that there was temporary total disability is the further finding that such disability resulted both from the conversion reaction and from the physical injury. The finding that temporary total disability existed until January 31, 1975, necessarily implies that any temporary disability resulting from mental injury, ended on or before that date. A determination that the temporary disability caused by the mental injury ended is equivalent to finding that the condition has stabilized, that the healing period has ended.

In order to confirm the Department's award there must be credible evidence to support the Department's implicit finding that the temporary disability which resulted from

the conversion reaction (the healing period for the mental injury) terminated on or before January 31, 1975. Only if there is no credible evidence to support this finding, can Mrs. Valadzic succeed in reversing the finding that she suffered no permanent disability from the conversion reaction. The parties do not dispute on appeal that the temporary total disability attributable to the physical injury ended on January 31, 1975 or that no permanent disability resulted from the physical injury.

The test to be applied in reviewing the Department's findings is whether "there is any credible evidence in the record sufficient to support the finding made by the Department. The assumption in that test is, of course, that the evidence is relevant, that it is evidentiary in nature and not a conclusion of law, and that it is not so completely discredited by other evidence that a court could find it incredible as a matter of law." *R. T. Madden, Inc. v. ILHR Dept.*, 43 Wis.2d 528, 547, 169 N.W.2d 73 (1969). *See also, Kohler Co. v. ILHR Dept.*, 81 Wis.2d 11, 24, 259 N.W.2d 695 (1977); *Pfister & Vogel Tanning Co. v. ILHR Dept.*, 86 Wis.2d 522, 525, 273 N.W.2d 293 (1979).[3] In applying the credible evidence test, this

---

[3] These cases interpret sec. 102.23(1), Stats., which governs the power of this court to review the findings of fact made by the Department:

"102.23 **Judicial review.** (1) The findings of fact made by the commission acting within its power shall, in the absence of fraud, be conclusive. The order or award granting or denying compensation, either interlocutory or final, whether judgment has been rendered thereon or not, is subject to review only in the manner and upon the grounds following . . . .

". . .

"(d) Upon such hearing, the court may confirm or set aside such order or award; and any judgment which may theretofore have been rendered thereon; but the same shall be set aside only upon the following grounds:

"1. That the commission acted without or in excess of its powers.

court does not weigh conflicting credible evidence to determine what evidence shall be believed. If there is credible evidence to sustain the finding, irrespective of whether there is evidence that might lead to an opposite

"2. That the order or award was procured by fraud.

"3. That the findings of fact by the commission do not support the order or award."

*See* Haferman, *Judicial Review of Workmen's Compensation Cases,* 1973 Wis. L. Rev. 576, 583–588.

We note that sec. 15, Ch. 195, Laws of 1977, added sec. 102.23 (6), Stats., which provides:

"(6) If the commission's order or award depends on any fact found by the commission, the court shall not substitute its judgment for that of the commission as to the weight or credibility of the evidence on any finding of fact. The court may, however, set aside the commission's order or award and remand the case to the commission if the commission's order or award depends on any material and controverted finding of fact that is not supported by credible and substantial evidence."

We do not decide the effect, if any, of the "credible and substantial evidence" language now incorporated in subsection (6) on the "any credible evidence" test which has been applied by this court for many years. The parties did not raise this issue or brief it.

Note sec. 227.20(6), Stats., which limits the scope of judicial review of administrative agencies as follows:

"227.20 **Scope of review.** (1) The review shall be conducted by the court without a jury and shall be confined to the record, except that in cases of alleged irregularities in procedure before the agency, testimony thereon may be taken in the court and, if leave is granted to take such testimony, depositions and written interrogatories may be taken prior to the date set for hearing as provided in ch. 887 if proper cause is shown therefor.

". . .

"(6) If the agency's action depends on any fact found by the agency in a contested case proceeding, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact. The court shall, however, set aside agency action or remand the case to the agency if it finds that the agency's action depends on any finding of fact that is not supported by substantial evidence in the record."

conclusion, we must affirm. *Burks v. ILHR Dept.*, 45 Wis.2d 1, 5, 172 N.W.2d 27 (1969). There must be, however, such credible evidence that the findings will rest on facts and not on conjecture or speculation. *Shymanski v. Industrial Comm.*, 274 Wis. 307, 314, 79 N.W.2d 640 (1956). *Accord, Balczewski v. ILHR Dept.*, 76 Wis.2d 487, 493, 251 N.W.2d 794 (1977).

Mrs. Valadzic argues that there is no credible evidence to support the implicit finding that the temporary disability resulting from the mental injury terminated on or before January 31, 1975.

Briggs & Stratton concedes that there is no credible evidence that the temporary total disability from the mental injury terminated on January 31, 1975. The Corporation argues, however, that there is credible evidence that any temporary disability caused by Mrs. Valadzic's conversion reaction terminated in January 1974 and that there is credible evidence that any temporary disability caused by Mrs. Valadzic's physical injuries terminated on January 31, 1975.

The medical evidence does not conflict as to the existence of the conversion reaction. All the doctors except Dr. Verdone testified as to the psychological aspect of the symptoms. The medical testimony does not, however, establish clearly and without conflict, the extent and duration of the temporary disability, if any, resulting from the conversion reaction. The finding of mental injury alone does not warrant granting compensation. The mental harm may not be of a disabling nature. *Johnson I,* 5 Wis.2d at 593.

Dr. Mufson, a neurologist who saw Mrs. Valadzic immediately after the accident and who last saw her on March 4, 1974, diagnosed her injury as a mild cerebral concussion and acute cervical strain, although he could find no objective evidence of injury. He referred to her complaints as having a marked "psychogenic overlay", which he said is the same as a conversion reaction. He

testified there was no permanent disability as a result of the injury of August 14, 1973. He felt that as of January 10, 1974, she was capable of returning to work and that she would complain of pain for many more weeks. He believed "it would be to her advantage to return to work." When asked whether the symptoms of the conversion reaction were of a permanent nature, he indicated that he could not say, because this subject was in the domain of a psychiatrist. He did not think she was malingering.

Dr. Richard Strassburger, a neurologist, saw Mrs. Valadzic on November 13, 1973 and December 11, 1973. He could find no objective evidence of abnormality or organic basis for her symptoms. On the basis of her description of the accident and of her symptoms he concluded that she suffered a contusing injury. It was also his opinion that her complaints were "largely psychogenic." He testified that he was as competent as, or perhaps even more competent than, a psychiatrist to say whether a psychogenic overlay is present in any given instance of injury, although he conceded that an analysis of the origins of the overlay was more properly in the field of psychiatry. He testified that in his medical opinion on the basis of his examination of Mrs. Valadzic, her condition "whether psychogenic or organic, if that is the correct term" does not warrant disability beyond January, 1974.

Dr. Anthony Verdone, a general practitioner who first treated Mrs. Valadzic in April 1974 at Nicolet Hospital and last saw her October 11, 1975, concluded that she had suffered an acute cranial-cervical-dorsal injury and an impingement injury to the brachial plexus. She also developed a frozen shoulder syndrome or tendinitis of the right bicipital tendon and periarthritis of the joint. She had limitation of motion of the right shoulder and severe pain upon certain motion of her right arm. He did not testify as to the existence of psychogenic overlay. He concluded that her healing period ended in May

1975, that is, that her condition had stabilized as of May 1975, and that she had suffered twenty percent permanent disability to the shoulder and ten percent permanent disability to the body. He did not testify as to temporary disability.

Dr. John Worthington, an internist at the Mayo Clinic, summarized his findings and those of other physicians at the clinic who had examined Mrs. Valadzic. Mrs. Valadzic was at Mayo Clinic on December 23, 1974 and from January 28 through 31, 1975 and May 14 through 16, 1975. The doctors concluded that she had received a musculoligamentous injury to the cervical spine in the accident and that she had developed a bicipital tendinitis or periarthritis of the shoulder as a result of the original injury to the neck. He stated that there was some psychologic overlay contributing to the symptoms. However, he did not think the symptoms were entirely psychogenic. He felt she had organically produced pain but that emotional factors were significant, namely, psychogenic overlay and a low pain threshhold. When he saw her she was still suffering pain and limitation of motion of her shoulder; she was anxious, tense and depressed. Dr. Worthington stated that he did not obtain a psychiatric consultation because a psychiatrist would not be able to estimate the degree to which her symptoms were due to psychological factors. The psychiatrist would have referred that issue back to him, he said. Dr. Worthington did not make an independent determination as to permanent disability but concurred with the conclusion of Dr. Sim, an orthopedic surgeon at the Mayo Clinic, that there was ten percent permanent partial disability of the right shoulder. Dr. Worthington did not state that the conversion reaction resulted in temporary or permanent disability. Dr. Worthington stated that the patient's mo-

tivation was significant in affecting her ability of performing her job, and he conceded that some patients with Mrs. Valadzic's disability could perform her job at Briggs & Stratton. He also conceded that had he known Mrs. Valadzic had previously made a series of claims against insurance companies and various entities (including this employer) it would raise strong suspicions as to her motivations. Dr. Worthington did not think she was malingering.

To summarize, Drs. Mufson and Strassburger testified that as of January 1974 sufficient time had elapsed for healing of the injury and that no further disability was warranted due to the injury at the Briggs & Stratton plant. They testified that there was psychogenic overlay, but they did not testify specifically as to the separate effects of the mental and physical injuries. Dr. Mufson testified that when he saw Mrs. Valadzic in March 1974 there was still psychogenic overlay. Dr. Worthington perceived a psychogenic overlay as late as May 1975. His diagnosis was that her symptoms were organic with a psychogenic overlay; he did not feel she was capable of returning to work at that time and he stated that she had permanent partial disability. He did not testify specifically the extent to which her permanent partial disability was attributable to the conversion reaction or the extent to which it was attributable to organic injury.

The issue is not whether there was evidence of the existence of a conversion reaction as late as May 1975, but whether there is credible evidence in the record to support the Department's implicit finding that the temporary disability caused by the conversion reaction did not extend beyond January 31, 1975.

The circuit court concluded that because the Department found that the temporary disability extended until January 31, 1975, the Department completely rejected

the testimony of Drs. Mufson and Strassburger. Therefore, reasoned the circuit court, there was no evidence from which the Department could conclude that the period of healing of Mrs. Valadzic's conversion reaction ended on or before January 31, 1975, and without establishing a healing period for the mental injury, the Department could not determine whether Mrs. Valadzic suffered permanent disability caused by the mental injury. We do not agree with this analysis. We conclude that on the basis of all the evidence, the Department could have accepted the testimony of Drs. Mufson and Strassburger that the temporary disability from mental injury ended in January 1974, even though it did not accept their testimony that temporary disability resulting from physical injury ended January, 1974. *Cf. Nehls v. Nehls,* 21 Wis.2d 231, 237, 124 N.W.2d 18 (1963). There was credible evidence that Mrs. Valadzic's injuries, whether mental or physical or both, had stabilized by January 31, 1975, that is that she had attained maximum medical recovery, and that as of that date a determination of permanent disability could be made.

In evaluating medical testimony, the Department is the sole judge of the weight and credibility of the witnesses. The commission's finding on disputed medical testimony is conclusive. Where there are inconsistencies or conflicts in medical testimony, the Department, not the court, reconciles the inconsistencies and conflicts. *Semons Dept. Store v. ILHR Dept.,* 50 Wis.2d 518, 528, 184 N.W.2d 871 (1971); *Burks v. ILHR Dept.,* 45 Wis.2d 1, 6, 172 N.W.2d 27 (1969); *Johnston v. Industrial Comm.,* 3 Wis.2d 173, 181, 87 N.W.2d 822 (1958).

Because there is credible evidence to support the Department's implicit finding that the healing period for the mental injury terminated by January 31, 1975 and

its express finding that there was no permanent disability caused by the conversion reaction, we reverse the order of the circuit court and remand the cause to the circuit court with directions to confirm the order of the Department.

*By the Court.*—Order reversed and cause remanded with directions to enter an order pursuant to the opinion.