CITY OF PHILLIPS and another, Appellants, V. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and another, Respondents.

*No. 124. Submitted November 2, 1972.—Decided December 7, 1972.*
(Also reported in 202 N. W. 2d 249.)

570

For the appellants the cause was submitted on the brief of *deVries, Vlasak & Schallert* of Milwaukee.

For the respondent Department of Industry, Labor & Human Relations the cause was submitted on the brief of *Robert W. Warren,* attorney general, and *Donald P. Johns,* assistant attorney general.

WILKIE, J. One issue is raised by this appeal: Was there sufficient credible evidence to sustain the finding that, at the time of his fatal injury on April 23d, Donald C. Marks was performing services incidental to his employment by the city of Phillips?

Appellants first argue that the determination of the department amounts to a conclusion of law rather than a finding of fact. We have said many times in making review of such workmen's compensation cases that conclusions of law involve those situations where "the facts are undisputed and but one reasonable inference can be drawn from those facts." [1]

Appellants argue that this court may rule unfettered by the department's determination in this case because it constituted a conclusion of law rather than a finding of fact. No findings of fact on the issue of whether

[1] *Detter v. ILHR Department* (1968), 40 Wis. 2d 284, 287, 161 N. W. 2d 873.

Marks was deviating from his employment were made, according to appellants, because the hearing examiner stated in his findings and order:

". . . that it would be speculative to find that at the time of the injury, the deceased was engaged in a deviation for a private or personal reason . . . ."

This, assert appellants, was not a choice between competing evidence and inferences therefrom but a conclusion "that the uncontradicted evidence was insufficient to rebut the presumption of employment." Appellants also argue that the material facts surrounding Marks' fatal injury are not in dispute and the one inference able to be drawn from these undisputed facts is Marks' deviation for a personal purpose.

This conclusion-of-law theory advanced by appellants overlooks several cases in this jurisdiction which suggest ultimate facts may replace evidentiary facts "where the evidence before the commission is sufficient to establish the ultimate facts declared or found and such facts are inherent in and necessary to the determination of the questions involved in arriving at the decision." [2] Thus, for example, a contention very similar to appellants' was advanced in *Milwaukee v. Industrial Comm.*[3] Therein the commission found an employee had sustained an accidental injury. In response to the contention that this was a mere conclusion of law, we held there to be sufficient evidence supporting this finding of ultimate fact. The same result was reached in *Schuh v. Industrial Comm.*,[4] wherein the commission's findings " 'applicant did not sustain injury arising out of his employment with the respondent' " were held to be sufficient ultimate facts.

---

[2] *Van Pool v. Industrial Comm.* (1954), 267 Wis. 292, 294, 64 N. W. 2d 813.

[3] (1963), 21 Wis. 2d 129, 124 N. W. 2d 112.

[4] (1958), 2 Wis. 2d 611, 612, 87 N. W. 2d 256.

But the final resolution of appellants' contention involves a review of the evidence which was before the department as it made its findings of ultimate fact. The evidence consists of testimony and exhibits presented in the two-day hearing. Also before the department was an investigative report compiled by Conrad Henry's insurer, State Farm Mutual Automobile Insurance Company. The examiner overruled objection to the introduction into evidence of this report, stating he would reject the irrelevant and hearsay portions thereof.

The evidence before the department which supports its ultimate fact determination includes testimony by Marks' widow that he was a man of odd hours. He would, for example, spend hours riding with fellow police officers during their late evening shifts. It was not unusual, according to Mrs. Marks, for her husband to be called or to voluntarily return to the police station late in the evening. Also supportive of the department's ultimate fact finding is the insurance report of State Farm's field claims representative, Jon Piering. This report indicates Piering talked with the owners and operators of several business establishments in the area of the fatal accident. Of the taverns, the bartender of only one indicated that Marks had been there at 8 p. m. during the evening preceding his death. This occurred at Pete's Tavern on State Street, just west of 27th Street. According to the bartender, Marks stayed about one-half hour and left with the stated purpose of finding a room.

The investigator also talked with owners and waitresses in various restaurants in the accident's vicinity. Waitresses in two of these restaurants indicated Marks had been there during the evening and early morning. The waitress at Kelly-Joe's Restaurant, located on State Street one-half block east of 27th Street, indicated Marks had eaten there at approximately 10 p. m. on the evening of April 22d. The waitress at Jimmy's Res-

taurant, 2610 North State Street, also acknowledged Marks had eaten there at approximately 2:30 a. m. on the 23d. According to the waitress, Marks was very quiet and stayed only long enough to eat his order of sausage and eggs. Marks' fatal accident occurred about twenty minutes later, at approximately 2:50 a. m.

We are satisfied that this evidence is sufficient to support the department's findings of ultimate fact.

Appellants also argue that this court is not bound by the department's determination because here there are no disputed facts and only one reasonable inference can be drawn therefrom—deviation for personal purpose. These undisputed facts, according to appellants, include Marks' 0.24 percent alcohol blood weight, his apparent northerly direction (away from the motel) when he was struck, and his familiarity with the surrounding neighborhood. The sole inference able to be drawn, assert appellants, is a deviation for personal purposes.

But that Marks had an extremely high alcohol blood content, that he knew the neighborhood and inhabitants thereof well and was walking away from the motel do not give rise to the single inference of deviation. Mrs. Marks testified to her deceased husband's night-owlish habits. There is evidence that he had just finished a late night snack. It is also clear that Marks could not have been heading to another tavern. The Milwaukee ordinances required taverns in that city to close at 2 a. m. on weekdays on the date in question.[5] Where Marks was heading as he walked north [6] is open to speculation. An inference of a walk after a late dinner, albeit in the rain, is not so "tortured" as appellants suggest.

We therefore conclude that the department's finding that it would be speculative to find Marks was deviating

[5] Milwaukee Code of Ordinances, sec. 90–20 (2) (Ren. and Am. Ord. 756, F No. 63–1960, passed Mar. 31, 1964).

[6] The State Farm accident report diagrams Marks' direction as southbound rather than northbound.

from his employment is a valid finding of ultimate fact which must be sustained if supported by "any credible evidence." [7]

Appellants' second argument in urging this court to disregard the department's findings involves the sufficiency of the evidence herein and the general presumption of employment created by statute. The statute states:

"Every employe whose employment requires him to travel *shall be deemed to be performing service growing out of and incidental to his employment* at all times while on a trip, except when engaged in a deviation for a private or personal purpose. Acts reasonably necessary for living or incidental thereto shall not be regarded as such a deviation. Any accident or disease arising out of a hazard of such service shall be deemed to arise out of his employment." (Emphasis supplied.) [8]

Appellants argue the presumption created by this statute is not a "strong" one as was suggested by the department and is rebutted in the instant case by the evidence of Marks' intoxication. Respondents cite several cases and assert the presumption created by this statute is a strong one.

It is unnecessary to determine whether the traveling employment special presumption is strong or weak and is or is not rebutted by a given quantum of evidence to the contrary.[9] As has been noted, the department's finding of fact may be reviewed in very limited situations. As was recently stated in *R. T. Madden, Inc. v. ILHR Department,*[10]

[7] *See Hansen v. Industrial Comm.* (1951), 258 Wis. 623, 626, 46 N. W. 2d 754.

[8] Sec. 102.03 (1) (f), Stats.

[9] *Unruh v. Industrial Comm.* (1959), 8 Wis. 2d 394, 398, 99 N. W. 2d 182: "The question is not whether there is credible evidence in the record to sustain a finding the commission did not make, but whether there is any credible evidence to sustain the finding the commission did make."

[10] (1969), 43 Wis. 2d 528, 547, 548, 169 N. W. 2d 73.

"It is our conclusion the test should be whether there is any credible evidence in the record sufficient to support the finding made by the department. The assumption in that test is, of course, that the evidence is relevant, that it is evidentiary in nature and not a conclusion of law, *and that it is not so completely discredited by other evidence that a court could find it incredible as a matter of law.* This is clearly not the same as a reviewing court's weighing conflicting credible evidence to determine what shall be believed. That is solely within the province of the administrative agency.

". . . the duty of the applicant is not to prove his case by a preponderance of the evidence, but merely to produce such credible evidence that the findings will rest upon facts and not upon conjecture or speculation.

*"Under this view, which is compelled by the statute, we are obliged to uphold the department's findings even though they be contrary to the great weight and clear preponderance of the evidence."* (Emphasis supplied.)

Viewed from this point of view, the department's findings of fact must be affirmed. It is quite true that Marks' alcoholic blood count was 0.24 percent and his apparent direction was away from his motel. These factors would serve to indicate, as appellants suggest, his intent to deviate for personal purposes. Appellants also correctly cite *Dibble v. ILHR Department,*[11] for the proposition that intoxication is relevant evidence of a claimant's state of mind to deviate or not. It should be noted, however, that this court, in *Dibble,* specifically noted it was the department's function to infer deviation from intoxication:

"While a cocktail or two before dinner probably is an acceptable social custom incidental to an act reasonably necessary to living, *the department could conclude* that Dibble's indulgence was beyond reasonableness." (Emphasis supplied.) [12]

[11] (1968), 40 Wis. 2d 341, 161 N. W. 2d 913.

[12] *Id.* at page 350. *See also: Schwab v. ILHR Department* (1968), 40 Wis. 2d 686, 691, 162 N. W. 2d 548: "We are satisfied from our examination of the record that there is credible evidence

This court has pointedly refrained from ruling as a matter of law that intoxication is synonymous with personal deviation. Indeed, in *Dibble* it was noted that intoxication, while indicative of intent to deviate, does not per se defeat a claim but only decreases benefits.[13] This was recently made clear in *Lager v. ILHR Department*,[14] wherein the claimant therein, similar to Marks, had an alcohol blood count of 0.24 percent. Rather than rule as a matter of law that the claimant's high alcohol blood content precluded his claim, this court returned the findings to the department in order to clarify its basis for denying compensation. Important is our statement:

"It is clear, as a matter of law, that, in the event a salesman commences travel in the course of his employment and subsequently deviates from that employment but later resumes his route which he would have to follow in the pursuance of his employer's business, the deviation has ceased and he is performing services incidental to and growing out of his employment.

"If it was the department's intention to say, as a matter of fact, that Lager commenced on his course of employment, the claim is not defeated even though there were a substantial deviation before he resumed his usual homeward path."

This is a close case. The department could have found either way from the credible evidence. It could have adopted different inferences from that evidence as the trial court said it would have done if it were the fact finder. In such borderline cases the soundest approach in weighing the evidence and adopting findings thereon is best summarized in *Tesch v. Industrial Comm.:* [15]

in the record from which the commission could infer that Schwab was not rendering services to his employer on the night of June 4, 1963, even though this court might decide differently if permitted to make its own findings."

[13] *Dibble v. ILHR Department, supra,* footnote 10, at page 350.

[14] (1971), 50 Wis. 2d 651, 661, 185 N. W. 2d 300.

[15] (1930), 200 Wis. 616, 229 N. W. 194.

"... In cases where the evidence is evenly balanced and an inference may be drawn one way as easily as another, the scale should be turned in favor of the claimant, principally because it was the intent and purpose of the act to bring border-line cases under it and to close up avenues of escape which would naturally be suggested to those seeking to evade liability under the act." [16]

*By the Court.*—Judgment affirmed.

HALLOWS, C. J. *(dissenting).* A conclusion of law is a conclusion, whether the facts are undisputed or not. Whether a finding can be made as a matter of law depends upon whether more than one reasonable conclusion can be made on the facts. I disagree with much of what is said concerning this court's power and scope of review of decisions of the ILHR Department.

It is unrealistic and incredible that Donald C. Marks was on the city of Phillips' business as a chief of police at approximately 4 a. m. while intoxicated in Milwaukee even though he came to attend a police administrative school. No classes were held at that hour or anywhere near that hour of the morning, and the state of intoxication of a police officer was not a prerequisite for attendance. Only one reasonable inference can be drawn. Marks was out on the town, a deviation not covered by workmen's compensation. For the hearing officer to say such a conclusion would be speculative is nonsense; there is no evidence to show Marks was about his employer's business when killed. In my view, this is not a close case and the majority opinion protests too much.

I would reverse.

[16] *Id.* at page 627. *See also: Green Valley Co-operative Dairy Co. v. Industrial Comm.* (1947), 250 Wis. 502, 506, 27 N. W. 2d 454; *Prentice v. ILHR Department* (1968), 38 Wis. 2d 219, 156 N. W. 2d 482.