CBS Inc., and Lumbermens Mutual Casualty Company, Plaintiffs-Appellants,†

v.

Labor & Industry Review Commission and Richard Kamps, Defendants-Respondents.

Court of Appeals

No. 96–3707. Submitted on briefs August 4, 1997.—Decided September 10, 1997.

(Also reported in 570 N.W.2d 446.)

† Petition to review granted.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *James C. Ratzel* of *Otjen, Van Ert, Stangle, Lieb & Weir, S.C.* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Scott C. Woldt* of *Curtis, Wilde & Neal* of Oshkosh.

Before Snyder, P.J., Brown and Anderson, JJ.

BROWN, J. This case confirms that traveling employees may participate in reasonable recreational activities without deviating from their employment under § 102.03(1)(f), STATS., of the Worker's Compensation Act. It also affirms a LIRC determination that downhill skiing is not an unreasonable recreational activity simply because of the risk involved. Rather,

287

LIRC should consider and did consider many factors in making the reasonableness determination.

Richard Kamps was hired to work as a runner by CBS, Inc., to cover the Winter Olympic games in February 1994 in Lillehammer, Norway. This required Kamps to travel and work in Lillehammer from February 6 through February 27, 1994. On February 21, CBS gave Kamps and the rest of his work crew the day off. Kamps was free to do as he wished, as CBS placed no restrictions on his activities. At the suggestion of his immediate supervisor, Kamps and nine other members of the crew, including the supervisor, decided to go downhill skiing as a group. CBS provided the group with transportation, as well as free ski lift passes. The ten-member group remained on-call during this time and had to let the producer know where it was going to be in case it was needed to tape additional footage. During this ski outing, Kamps fell and injured his knee.

CBS maintained that Kamps' injury was not compensable under the Worker's Compensation Act. According to CBS, when Kamps was given the day off and decided to go skiing for his own personal enjoyment, he deviated from his employment under § 102.03(1)(f), STATS. An administrative law judge agreed and held that Kamps' injury was not compensable. Kamps appealed and LIRC reversed this decision. LIRC reasoned that Kamps was working in a location where skiing was a reasonable form of recreation incidental to living. Further, LIRC found that although Kamps assumed some risk by going skiing, the risk was not unreasonable, nor was it unexpected or unsanctioned by CBS. In fact, CBS provided transportation to the ski hill and free ski lift passes. Based on these facts and circumstances, LIRC found that

Kamps' ski injury was compensable as an activity incidental to living, within the scope of § 102.03(1)(f). The trial court affirmed LIRC's findings.

Preliminarily, we note that CBS seeks to have us review the issue independently without any deference to LIRC. This we will not do. The legislative policy in worker's compensation cases is to limit appeals and protracted litigation in the interest of expediting justice for the employee. *See Goranson v. DILHR,* 94 Wis. 2d 537, 553, 289 N.W.2d 270, 278 (1980). To that end, we will take note of LIRC's substantial expertise in this area as it routinely applies the statute and we must give due deference to this experience.

Now, we move to the issue. We will initially set forth the test to be used in resolving issues under § 102.03(1)(f), STATS. The statute yields a general presumption of employment for the entire duration of the employee's trip. *See* § 102.03(1)(f) (employee "deemed to be performing service growing out of and incidental to the employe's employment *at all times* while on a trip") (emphasis added). A deviation occurs only when LIRC concludes that: (1) the employee deviated from the business trip, and (2) the deviation was for a personal purpose not reasonably necessary for living or incidental thereto. *See id.; Dibble v. ILHR Dep't,* 40 Wis. 2d 341, 346, 161 N.W.2d 913, 916 (1968).

CBS urges this court to put aside LIRC's findings and rule as a matter of law that downhill skiing is synonymous with deviating from the scope of employment. CBS argues that courts have never permitted traveling employees to indulge in risky personal recreational activities such as downhill skiing and remain within the scope of their employment. Rather, courts

have regularly limited coverage to those activities such as eating, sleeping and sightseeing that are reasonably necessary or incidental to everyday existence for a traveling employee.

We are not certain whether CBS is arguing that recreation per se *cannot* be considered an activity necessary and reasonable for everyday existence. It appears, however, that this is at least a facet of its argument because of the statement in its brief that reasonable activities of a traveling employee include only eating, sleeping and sightseeing. Missing from the list is "recreation." And CBS also opines that "the test is not whether there is a risk that is reasonable or unreasonable, but whether the activity is a deviation for a private or personal purpose." We gather from this that CBS considers any form of recreation except the expected activity of sightseeing to be for a private or personal purpose.

If this is CBS' argument, it is clearly wrong. The case law interpreting this statute has allowed employees to engage in any activity that is ordinarily considered usual and proper. *See Hansen v. Industrial Comm'n*, 258 Wis. 623, 627, 46 N.W.2d 754, 756 (1951). Traveling employees have never been required to remain idle or seek the refuge of their hotel in order to avoid the risk of deviating from their employment. *See id.* at 626, 46 N.W.2d at 756.

Activities considered usual and proper include recreation. In *City of Phillips v. DILHR*, 56 Wis. 2d 569, 202 N.W.2d 249 (1972), our supreme court upheld an ILHR finding that a traveling employee remained within the scope of employment even though he was intoxicated and walking away from his hotel at a late hour when he was struck by two cars and killed. Simi-

lar to the case before us, the employer's insurer urged the court to rule that the sole inference to be drawn from intoxication and walking away from the hotel was that the employee deviated from his employment. *See id.* at 576, 202 N.W.2d at 252–53.

The court rejected this argument. While intoxication was deemed relevant, it was not synonymous with an intent to deviate. *See id.* at 579, 202 N.W.2d at 254. The court held that it was within the province of the department, not the court, to weigh the factors such as intoxication when determining if the employee deviated from his employment. *See id.* at 578, 202 N.W.2d at 254.

What that case teaches, and what *Hansen* tells us, is that the test for whether a specific activity is within the scope of employment is the reasonableness of the activity and that recreation can be considered a reasonable activity.

In this regard, we consider *Proctor v. Saif Corp.*, 860 P.2d 828 (Or. Ct. App. 1993), to be instructive as to why reasonable recreation comes within the statute. There, a traveling employee injured himself playing basketball during leisure time. *See id.* at 829. The court reasoned that an employee may " 'indulge in any *reasonable* activity at that place, and if he does so the risk inherent in such an activity is an incident of his employment.' " *Id.* at 829 n.1 (quoted source omitted) (emphasis added). The court held that traveling employees may relax and satisfy their need for recreation through activities that have little or no relationship to work. We agree with the analysis in *Proctor* and we are satisfied that the law in Wisconsin is likewise. Thus, to the extent that CBS is arguing that the traveling employee is covered only if the injury

occurs while eating, sleeping or sightseeing, we reject the assertion.

CBS also appears to contend that skiing is an unreasonable activity as a matter of law because it is so risky that it must be considered a private deviation from normal activity. Correlatively, CBS asserts that there was no evidence before LIRC from which that agency could accurately assess the risk of Kamps' skiing.

LIRC had this to say about Kamps' skiing activity:

> The applicant was a traveling employee in a location where skiing was a reasonable form of recreation incidental to living. The activity was encouraged and supported by the employer, even to the extent of providing the applicant with a free ski lift pass. While the applicant assumed some risk by going skiing, it was not an unreasonable risk nor one unexpected or unsanctioned by the employer. Based on the particular facts and circumstances of this case, the commission finds the applicant's knee injury is compensable as an activity incidental to living, within the meaning of section 102.03[(1)](f), Stats.

LIRC thus keyed on the nature of the trip in deciding whether skiing was a reasonable form of activity. We agree that this is the proper means by which to assess the issue. Professor Larson, an authority long used by our supreme court and this court as persuasive authority in worker's compensation cases, writes that where an injury occurs in a distant location, the nature of the trip may help explain the scope of the coverage. *See* 2 ARTHUR LARSON, LARSON'S WORKER'S COMPENSATION LAW, § 25.23(c), at 5–310, 5–311 (May 1997 Cumulative Supp.). So, for example, where an employee working in Tel Aviv was killed by Arab ter-

rorists during a sightseeing tour in Israel, the context of the location of the trip was integral to a finding that the form of recreation was normally to be expected of that traveling employee. *See Lewis v. Knappen Tippets Abbett Eng'g Co.,* 108 N.E.2d 609, 611 (N.Y. 1952) (cited by LARSON, *supra*, § 25.23(c), at 5–310). From this case, we can discern that the employee's conduct was not unanticipated, unforeseeable or unreasonable. Another example is the *Proctor* case where the employee was attending a conference and injured his Achilles tendon while playing basketball at an athletic facility fifteen miles from the conference location. There are other examples. But the key is not simply the form of recreation, but other factors as well, including location.

So here, LIRC's determination makes sense. Kamps was in Lillehammer, Norway, the site of the Winter Olympics, where downhill skiing was a major venue. It is what people do in Lillehammer. It is not unreasonable to expect that an employee, during lull time, would ski as a form of recreation. This is especially so here because the facts are that a supervisor suggested the activity, and CBS provided the lift tickets and kept Kamps on-call during the ski outing. Certainly, LIRC cannot be faulted for concluding that skiing was a reasonable form of recreational activity under the facts and circumstances of this case.

CBS reads the LIRC decision to say that if a given activity is found to be customarily indulged in by the local population, LIRC will hold it to be a reasonable activity incidental to living. This is an inaccurate interpretation of LIRC's rationale. The mere fact that a certain town is populated with avid cliff divers does not by itself make cliff diving an activity reasonably necessary to living. Reasonableness matters and that

determination is for LIRC to make. A multitude of other factors, in addition to the level of inherent risk, may be considered. We reject CBS' argument.

Finally, CBS argues that LIRC got its facts wrong. We find this to be a curious argument since, at another place in its brief, it claims that the facts and inferences are undisputed and we are faced only with a question of law. Nonetheless, we will address the issue. CBS insists that it never encouraged Kamps to go skiing. Also, CBS asserts that because there is no evidence of Kamps' level of skiing ability, there is no foundation supporting LIRC's finding that it was reasonable for Kamps to ski.

It is not the job of the reviewing court to evaluate conflicting evidence to determine which evidence should be accepted. *See Valadzic v. Briggs & Stratton Corp.*, 92 Wis. 2d 583, 592–93, 286 N.W.2d 540, 544–45 (1979). The hurdle CBS must jump is high, as we are obliged to uphold LIRC's findings even if they are contrary to the great weight and clear preponderance of the evidence. *See Phillips*, 56 Wis. 2d at 578, 202 N.W.2d at 254. We must affirm if there is *any* credible evidence to support LIRC's determination; we will not search for evidence that defeats LIRC's determination. *See Valadzic*, 92 Wis. 2d at 592–94, 286 N.W.2d at 544–45. The same can be said of all inferences reached as a result of the historical facts placed in the record. Based on these facts and circumstances, we conclude that there was sufficient credible evidence for LIRC to conclude that skiing was a reasonable form of recreation incidental to living in Lillehammer and that the risks of skiing were not unreasonable, nor were they unexpected or unsanctioned by CBS. Accordingly, the order of the trial court is affirmed.

*By the Court.*—Order affirmed.