CBS, INC., and Lumbermens Mutual Casualty Company, Plaintiffs-Appellants-Petitioners,

v.

LABOR & INDUSTRY REVIEW COMMISSION and Richard Kamps, Defendants-Respondents.

Supreme Court

*No. 96–3707. Oral argument April 8, 1998.—Decided June 30, 1998.*

(Also reported in 579 N.W.2d 668.)

For the plaintiffs-appellants-petitioners there were briefs by *James C. Ratzel* and *Otjen, Van Ert, Stangle, Lieb & Weir, S.C.*, Milwaukee and oral argument by *James C. Ratzel*.

For the defendant-respondent, LIRC, the cause was argued by *Lowell E. Nass*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

For the defendant-respondent, Richard Kamps, there was a brief by *Scott C. Woldt* and *Curtis & Neal Law Offices*, Oshkosh and oral argument by *Scott C. Woldt*.

¶ 1. JANINE P. GESKE, J. CBS, Inc. and Lumbermens Mutual Casualty Company (collectively, CBS) seek review of a published decision of the court of appeals.[1] The court of appeals affirmed a decision of the circuit court for Waukesha County, Patrick L. Snyder, Judge, upholding the Labor and Industry Review Commission's (LIRC) determination that, based on the particular facts and circumstances, a ski injury of a traveling employee was compensable as an activity incidental to living within the meaning of Wis. Stat. § 102.03(1)(f) (1993–94).[2] Because the scope of appellate review of the agency determination in this case is

---

[1] *CBS, Inc. v. LIRC*, 213 Wis. 2d 285, 570 N.W.2d 446 (Ct. App. 1997).

[2] All future statutory references herein will be to the 1993–94 volume unless otherwise indicated.

limited, our conclusion is narrow. Based upon the particular facts and circumstances of this case, and applying great weight deference, we conclude that LIRC's interpretation of the statute to include Richard Kamps' knee injury as an activity incidental to living within the meaning of Wis. Stat. § 102.03(1)(f) is reasonable, and that there is credible and substantial evidence to support that determination.

## FACTS AND PROCEDURAL HISTORY

¶ 2. The following are the facts as found by LIRC. In February 1994, CBS hired Richard Kamps (Kamps) to assist in the television coverage of the 1994 Winter Olympic Games in Lillehammer, Norway. Kamps was to work as a "runner" for CBS on the bobsled and luge events from February 6 to February 27, 1994. Kamps' duties required him to leave his home and stay in the Lillehammer area during the run of the Olympics. CBS paid Kamps a daily wage, and provided meals and lodging. On February 21, CBS gave Kamps and his crew the day off from work. There were no Olympic competitions scheduled that day for Kamps and his crew to cover. During this free time, the crew members were free to do as they wished.[3] Kamps' immediate supervisor suggested that the crew go skiing as a group, which

---

[3] The court of appeals made a factual finding that Kamps was "on call" at the time of his injury. While we benefit from the legal analysis of the court of appeals, LIRC is the fact finder in this case. Because LIRC did not base its ultimate factual finding on whether or not Kamps was "on call," and because we conclude that there was credible and substantial evidence to support LIRC's conclusion that Kamps' injury was compensable, we need not resolve the question of whether Kamps was "on call." The court of appeals erroneously relied on a factual finding not made by the agency.

they ultimately did. CBS provided the crew with transportation and free ski lift passes.[4] Kamps did not need the lift passes to perform any part of his job. While skiing, Kamps fell and injured his knee.

¶ 3. The record contains additional facts regarding Kamps' qualifications for the CBS job which support LIRC's findings. Prior to this injury, Kamps had worked for CBS on a number of other occasions since 1989. That work included serving as a statistician, runner and stage manager for athletic broadcasts including the Super Bowl and NFL games, the World Series and playoff games. Kamps testified that his strong athletic background in all sports helped in his positions with CBS. That background included high

---

[4] CBS has contended throughout this case that it did not provide Kamps' crew with ski lift passes. LIRC heard evidence on this issue and ultimately made a finding of fact that CBS did provide Kamps with free ski lift passes. Findings of fact made by LIRC when acting within its powers shall be conclusive in the absence of fraud. *See* Wis. Stat. § 102.23(1)(a). On review we must affirm LIRC's decision if there is credible and substantial evidence supporting those findings, regardless of whether there is evidence to support the opposite conclusion. *See Valadzic v. Briggs & Stratton Corp.*, 92 Wis. 2d 583, 592 n.3, 593–94, 286 N.W.2d 540 (1979); *see also* Wis. Stat. § 102.23(6). Although the facts in the record do not plainly indicate that CBS gave its employees lift passes, uncontested evidence in the record indicates that CBS employees were able to receive free ski lifts and discounts on equipment rentals by displaying their CBS credentials. The fact finder could reasonably infer from this evidence that employment by CBS played a role in Kamps' crew receiving free ski lifts. *See Brakebush Bros., Inc. v. LIRC*, 210 Wis. 2d 624, 630–31, 563 N.W.2d 512 (1997) (reviewing court accepts as conclusive any agency finding based upon a reasonable inference from credible and substantial evidence).

school and college athletics, as well as snow skiing for 16 years, and water ski performances for 17 years.

¶ 4.　The record also contains facts about Kamps' work detail for CBS at Lillehammer which support LIRC's findings. Kamps was originally hired to help cover the freestyle skiing event. At some point that assignment was changed to the bobsled and luge events. Kamps' duties as a production support person included transporting camera crews and linking those crews with the producer. Kamps identified the Olympic competitors and set up video shots.

¶ 5.　Evidence in the record also demonstrates that during Kamps' stay in Norway as a CBS employee, CBS provided access to a swimming pool and bar for its workers. Kamps would talk with the athletes at night about the effect of the snow and ice conditions on the competition.

¶ 6.　Following his ski injury, Kamps commenced a worker's compensation claim with the Department of Industry, Labor and Human Relations (DILHR). The administrative law judge (ALJ) dismissed Kamps' application for a hearing, ruling that snow skiing is not usual and proper customary conduct of a traveling employee. Kamps filed a petition for review by LIRC. LIRC reversed the decision of the ALJ, concluding:

> The applicant was a traveling employe in a location where skiing was a reasonable form of recreation incidental to living. The activity was encouraged and supported by the employer, even to the extent of providing the applicant with a free ski lift pass. While the applicant assumed some risk by going skiing, it was not an unreasonable risk nor one unexpected or unsanctioned by the employer. Based on the particular facts and circumstances of this case, the commission finds that the applicant's knee

injury is compensable as an activity incidental to living, within the meaning of Section 102.03(f), Stats. (sic)

¶ 7. The circuit court, as well as the court of appeals, concluded that there was credible and substantial evidence to support LIRC's findings. Accordingly, the circuit court and the court of appeals affirmed the commission's decision.

I.

¶ 8. Findings of fact made by LIRC when acting within its powers are conclusive in the absence of fraud. *See* Wis. Stat. § 102.23(1)(a). Additionally, Wis. Stat. § 102.23(6) provides:

> If the commission's order or award depends on any fact found by the commission, the court shall not substitute its judgment for that of the commission as to the weight or credibility of the evidence on any finding of fact. The court may, however, set aside the commission's order or award and remand the case to the commission if the commission's order or award depends on any material and controverted finding of fact that is not supported by credible and substantial evidence.

Factual findings made by the commission which are supported by credible and substantial evidence are conclusive. *See Brakebush Bros., Inc. v. LIRC*, 210 Wis. 2d 624, 630–31, 563 N.W.2d 512 (1997). In addition, we must consider conclusive any finding by the commission based upon a reasonable inference from the credible evidence. *See Sauerwein v. ILHR Dep't*, 82 Wis. 2d 294, 300–302, 262 N.W.2d 126 (1978); *Hunter v. ILHR Dep't*, 64 Wis. 2d 97, 101–02, 218 N.W.2d 314

(1974); *Kraynick v. Industrial Comm'n,* 34 Wis. 2d 107, 111, 148 N.W.2d 668 (1967). If more than one inference can reasonably be drawn from the evidence, a question of fact is presented. *See Vocational, Tech. & Adult Educ. Dist. v. ILHR Dept.,* 76 Wis. 2d 230, 240, 251 N.W.2d 41 (1977).

¶ 9. CBS urges us to review LIRC's interpretation of the statute, as well as its application to these facts. Normally, statutory interpretation presents a question of law which a court reviews using a de novo standard. *See Hagen v. LIRC,* 210 Wis. 2d 12, 18, 563 N.W.2d 454 (1997) (citing *Stockbridge School Dist. v. DPI,* 202 Wis. 2d 214, 219, 550 N.W.2d 96 (1996)). Citing our decision in *Nottelson v. ILHR Department,* 94 Wis. 2d 106, 115–16, 287 N.W.2d 763 (1980), CBS argues that when the question presented is whether a particular set of facts meets a statutory standard, the question is one of law. LIRC and Kamps counter that in this case we are reviewing only a question of ultimate fact.

¶ 10. A contest over whether the question presented is one of law or fact recurs in cases brought to this court. Resolution of that question is not always easy. Indeed, our opinion in *Nottelson* fairly characterized the dilemma:

> One of the most troublesome issues in administrative law is determining whether. . .the application of a statutory concept to a concrete fact situation, should be treated as a question of fact or of law for purposes of judicial review. In many cases we have said that the determination of whether the facts fulfill a particular legal standard is a question of law. . . .Nevertheless, merely labeling the question as a question of law and labeling the commission's

determination as a conclusion of law does not mean that the court should disregard the commission's determination. Determination[s] of ["a deviation for a private or personal purpose," or of "acts reasonably necessary for living or incidental thereto"] call[ ] for a value judgment, and judicial review of such a value judgment, though a question of law, requires the court to decide in each type of case the extent to which it should substitute its evaluation for that of the administrative agency. We have recognized that when the expertise of the administrative agency is significant to the value judgment (to the determination of a legal question), the agency's decision, although not controlling, should be given weight. (Citations and footnotes omitted.)

*Nottelson*, 94 Wis. 2d at 115–117.

¶ 11. When the agency uses its expertise to interpret a statute, we accord the agency one of two levels of deference, namely, "due weight," or "great weight." *See Hagen,* 210 Wis. 2d at 18 (citing *Jicha v. DILHR,* 169 Wis. 2d 284, 290–91, 485 N.W.2d 256 (1992)). There are four factors we use to determine whether great weight deference is appropriate:

Great weight deference to an agency's interpretation of a statute is appropriate when: (1) the agency is charged by the legislature with administering the statute; (2) the interpretation of the agency is one of long standing; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity in the application of the statute.

*Id.* at 18–19 (citing *Harnischfeger Corp. v. LIRC,* 196 Wis. 2d 650, 660, 539 N.W.2d 98 (1995)).

¶ 12. We conclude that it is proper to apply great weight deference to LIRC's interpretation of

§ 102.03(1)(f) in this case based upon the four-factor test. The first factor is met by the fact that the legislature, through Wis. Stat. § 102.14(1), has charged LIRC, together with the Department of Workforce Development (DWD)[5] , with administering Chapter 102. In administering the chapter, courts have directed DWD and LIRC to interpret the statute and to make factual findings when determining a claimant's benefits. *Id.* at 19. The second and third factors are met by the fact that LIRC has interpreted the traveling employee provision for the last fifty-three years. *See e.g., Armstrong v. Industrial Comm'n,* 254 Wis. 174, 35 N.W.2d 212 (1948); *Hansen v. Industrial Comm'n,* 258 Wis. 623, 46 N.W.2d 754 (1951). Finally, LIRC's interpretation of Wis. Stat. § 102.03(1)(f) will provide uniformity in the application of the statute, as its judgment, rather than the judgments of various courts, will be uniformly applied to traveling employee cases.

■

¶ 13. Because the proper standard of review in this case is great weight deference, we will affirm LIRC's interpretation of Wis. Stat. § 102.03(1)(f) if it is reasonable. *See Hagen,* 210 Wis. 2d at 20 (citing *Lisney v. LIRC,* 171 Wis. 2d 499, 506, 493 N.W.2d 14 (1992)). An unreasonable interpretation of a statute by an agency is one that "directly contravenes the words of the statute, is clearly contrary to legislative intent, or is otherwise. . .without rational basis." *Id.* (quoting *Lisney,* 171 Wis. 2d at 506).

---

[5] The Department of Workforce Development (DWD) was formerly known as the Department of Industry, Labor and Human Relations (DILHR). *See* 1995 Wis. Act 289, § 275; 1995 Wis. Act 27, §§ 9130(4), 9430(5).

## II.

██

¶ 14. In this case, the parties do not dispute that Kamps was a traveling employee under Wis. Stat. § 102.03(1)(f). The statute permits compensation to injured traveling employees under these circumstances:

> Every employe whose employment requires the employe to travel shall be deemed to be performing service growing out of and incidental to the employe's employment at all times while on a trip, except when engaged in a deviation for a private or personal purpose. Acts reasonably necessary for living or incidental thereto shall not be regarded as such a deviation. Any accident or disease arising out of a hazard of such service shall be deemed to arise out of the employe's employment.

¶ 15. This provision was created to remedy situations in which employees, whose work required them to live away from home for periods of time, were not compensated for injuries sustained during normal activities of daily living on a business trip. *See Neese v. State Medical Soc'y*, 36 Wis. 2d 497, 504, 153 N.W.2d 552 (1967). The *Neese* court identified *Creamery Package Mfg. Co. v. Industrial Comm.*, 211 Wis. 326, 248 N.W.2d 140 (1933) as an example of an outcome that Wis. Stat. § 102.03(1)(f) was meant to remedy. In that case the court held that an employee's contraction of typhoid fever was not compensable because it was only conjecture that the employee contracted the disease during the exact time he was traveling for his employer. *See Creamery Package*, 211 Wis. at 331–32. *Gibbs Steel Co. v. Industrial Comm'n*, 243 Wis. 375, 10 N.W.2d 130 (1943) was another earlier failure to com-

pensate a traveling employee for injury sustained during employment. The *Gibbs* court held that an employee's fall in the bathtub was not compensable because bathing does not arise out of employment. *See* 243 Wis. at 378–79.

¶ 16. Because those early cases showed that "slight circumstances were apparently sufficient to show a 'deviation from employment,' " the legislature enacted Wis. Stat. § 102.03(1)(f). *Hansen v. Industrial Comm'n*, 258 Wis. 623, 628, 46 N.W.2d 754 (1951); *see also* ch. 537, Laws of 1945. The fact that the legislature worded the statute as a presumption in favor of coverage for traveling employees is a recognition of "the complexities of daily existence," *Hansen*, 258 Wis. at 626. The presumption also reflects a legislative intent to "make liability dependent on a relationship to the job, in a liberal, humane fashion, with litigation reduced to a minimum." *Neese*, 36 Wis. 2d at 505 (citation omitted). As a result of this change, the administrative agency and the courts came to acknowledge that "[d]uring the period of being at ease. . .[the traveling employee] is not required to seek immediate seclusion in a hotel and remain away from human beings at the risk of being charged with deviating from his employment." *Hansen*, 258 Wis. 2d at 626.

### III.

¶ 17. CBS contends that skiing is not "reasonably necessary for living or incidental thereto" as required by Wis. Stat. § 102.03(1)(f) because it is a recreational activity. CBS then cites several cases where compensation was denied for injuries sustained during recreational activities. *See, e.g., Brynwood Land Co. v. Industrial Comm'n*, 243 Wis. 380, 10 N.W.2d 137 (1943), *Schwab v. ILHR Dep't*, 40 Wis. 2d 686, 162

N.W.2d 548 (1968), and *Sauerwein v. ILHR Dep't,* 82 Wis. 2d 294, 262 N.W.2d 126 (1978). Those cases, however, are factually distinct and do not persuade us that compensation in this instance is inappropriate. Neither *Brynwood, Schwab* nor *Sauerwein* involved traveling employees; therefore the presumption created by Wis. Stat. § 102.03(1)(f) did not apply in those cases.

¶ 18. By analogizing the recreational activities of traveling and non-traveling employees, CBS essentially asks us to disregard the intent of the legislature to grant traveling employees broader protection for after-hours activities when their employment requires them to be away from home. *See Hansen,* 258 Wis. at 628, (concluding that traveling salesman's death was compensable when his body was found not far from the restaurant where he had dined, and there was no evidence that he had abandoned his employment for a private or personal enterprise). Moreover, because we review LIRC's determination based on the particular facts and circumstances of the case, we could not rule, as a matter of law, that a recreational activity such as skiing is never reasonably necessary for living, or incidental thereto. *See, e.g., City of Phillips v. ILHR Dep't,* 56 Wis. 2d 569, 579, 202 N.W.2d 249 (1972) ("[t]his court has pointedly refrained from ruling as a matter of law that intoxication is synonymous with personal deviation").

## IV.

¶ 19. Next, CBS disagrees with LIRC's present application of the statutory presumption in favor of traveling employees. CBS argues that Kamps engaged in a deviation from employment for a private or personal purpose. CBS contends that there was no

relationship between Kamps' skiing and the employment purpose that CBS had for its runners. To support this contention, CBS analogizes to several cases where the traveling employee was found to have engaged in a deviation for a private or personal purpose. CBS cites *Neese*, 36 Wis. 2d 497, where a hospital relations consultant was injured while traveling 30 miles out of his way to eat at a particular restaurant, despite the fact that other satisfactory restaurants were closer. The *Neese* court held that the employee was not engaged in an act reasonably necessary for living or incidental thereto. *See id.* at 507.

¶ 20.　CBS also cites *Dibble v. DILHR*, 40 Wis. 2d 341, 161 N.W.2d 913 (1968), where a salesman was killed in an automobile accident after driving away from his motel several hours after completing his sales calls for the day and after having numerous drinks in a lounge. The *Dibble* court held that the employee's alcohol indulgence was not an act reasonably necessary or incidental to living. *Dibble*, 40 Wis. 2d at 350. The analyses in both *Neese* and *Dibble* demonstrate that even when a traveling employee engages in a deviation for a personal or private purposes, the agency or reviewing court must still consider whether the deviation is an act reasonably necessary for living or incidental thereto.

¶ 21.　CBS also argues that Kamps' skiing was not usual and proper to his employment purpose, and thus is not compensable. *Hansen* provides that for an injury to be compensable, the worker must be doing the "usual legitimate things incidental to daily existence." *Hansen*, 258 Wis. at 626. CBS points to *Simons v. Industrial Commission*, 262 Wis. 454, 55 N.W.2d 358 (1952) and *Tyrell v. Industrial Commission*, 27 Wis. 2d 219, 133 N.W.2d 810 (1965), as examples of injuries

held noncompensable because at the time of injury the employee was not engaged in an activity usual and proper to his employer's purpose.

¶ 22. In comparing the facts of prior cases to the facts at bar, CBS fails to address the level of deference we accord LIRC's determinations. We are well aware that in some cases injuries sustained during recreational activities have been compensable, *see, e.g., Phillips,* 56 Wis. 2d at 576 (concluding that it would be speculative to find a deviation from employment when employee was hit by a car early in the morning, after stopping for a late night snack and visiting several taverns), and in others they have not. *Compare Phillips* with *Dibble,* 40 Wis. 2d at 350–51. The focus of our inquiry on review is not whether recreational downhill skiing by a traveling employee is generally compensable. Rather, our focus is on the reasonableness of LIRC's determination, based upon the particular facts and circumstances in this case. Because we afford LIRC great weight deference, we must affirm its decision if it is reasonable. *See Hagen,* 210 Wis. 2d at 20. LIRC's interpretation of Wis. Stat. § 102.03(1)(f) is unreasonable only if it "directly contravenes the words of the statute, is clearly contrary to legislative intent, or is otherwise. . .without rational basis." *Id.* (citation omitted).

## V.

¶ 23. We conclude that LIRC's interpretation of Wis. Stat. § 102.03(1)(f) is a reasonable one. LIRC's interpretation does not contravene the words of the statute, is not contrary to the provision's legislative intent, and has a rational basis. The statute creates a presumption that a traveling employee performs services incidental to his employment *at all times* on a

business trip until he returns from the trip. *See Lager v. ILHR Dep't*, 50 Wis. 2d 651, 658, 185 N.W.2d 300 (1971) (citations omitted). The burden of proving a personal deviation on the trip by the employee is upon the party asserting the deviation. *See id.* LIRC's conclusion that Kamps' downhill skiing was incidental to his employment, and that CBS did not meet its burden of overcoming this presumption, is supported by credible and substantial evidence. That evidence includes the fact that on the day of injury, Kamps learned that there were no competitions scheduled for his crew to cover. While CBS gave Kamps and his crew permission to do as they pleased, the ski trip took place at the suggestion of Kamps' supervisor. Additionally, the group used CBS vehicles to take them to the ski area.

¶ 24. The legislature created Wis. Stat. § 102.03(1)(f) with the intent to give traveling employees broader protection when their employment caused them to be away from home. *See Hansen*, 258 Wis. at 628; *see also Neese*, 36 Wis. 2d at 508. Moreover, we have consistently held that "work[er]'s compensation law must be liberally construed to include all services that can be reasonably said to come within it." *Black River Dairy Products, Inc. v. ILHR Dep't*, 58 Wis. 2d 537, 544, 207 N.W.2d 65 (1973) (citation omitted). LIRC's determination is consistent with that legislative intent to give traveling employees broader protection when working away from home. It is undisputed that Kamps' employment with CBS caused him to be away from home for a period of approximately three weeks. CBS agreed to pay Kamps a flat daily rate for each day he was in Lillehammer. Kamps only went skiing on the day of the accident because CBS did not assign his crew to cover an Olympic event that day. Kamps remained in the Olympic competition area dur-

ing the time he went skiing, and was skiing with his supervisor and members of his crew.

¶ 25. Finally, LIRC's interpretation of Wis. Stat. § 102.03(1)(f) recognizes that the presumption keeps the traveling employee within the scope of employment while conducting usual, legitimate acts incidental to daily existence. In this case, Kamps' employment with CBS took him to Lillehammer, Norway. His assignment was to help cover winter sporting events, and his employer provided him with lodging on a ski hill. In addition, at somewhat short notice Kamps was advised that he and his crew did not have to cover an event that day, but could spend the day as they pleased. Kamps went skiing, at the suggestion of his supervisor, in the company of his coworkers, transported to the ski site by vehicles provided by the employer. These facts constitute credible and substantial evidence on which LIRC based its interpretation that skiing was a usual, legitimate act incidental to Kamps' daily existence while a traveling employee for CBS under Wis. Stat. § 102.03(1)(f).

¶ 26. In affirming LIRC's factual findings and interpretation, the court of appeals gave some weight to the particular location of Kamps' traveling employment assignment. The court of appeals concluded that "there was sufficient credible evidence for LIRC to conclude that skiing was a reasonable form of recreation incidental to living in Lillehammer," *CBS, Inc. v. LIRC*, 213 Wis. 2d 285, 294, 570 N.W.2d 446 (Ct. App. 1997). In upholding LIRC's conclusion, the court of appeals also relied on foreign cases such as *Proctor v. SAIF Corp.*, 860 P.2d 828 (Or. Ct. App. 1993) and *Lewis v. Knappen Tippets Abbett Eng'g Co.*, 108 N.E.2d 609 (N.Y. 1952), as well as commentary in 2 Arthur Larson,

*Larson's Worker's Compensation Law,* § 25.23(c) at 5–310, 5–311 (May 1997 Cum. Supp.).

¶ 27. We agree that while the location of the traveling employee's work assignment is a factor in determining the reasonableness of his or her activity conducted there, it is not the only factor upon which the agency may base its determination of reasonable activity incidental to living. In this case, LIRC considered other factors, including employer support for Kamps' activity.

¶ 28. In summary, LIRC's interpretation of Wis. Stat. § 102.03(1)(f) is reasonable, and therefore is entitled to great weight deference. Even if we would be inclined to reach a different conclusion than did LIRC based on these facts, we have previously held that:

> In cases where the evidence is evenly balanced and an inference may be drawn one way as easily as another, the scale should be turned in favor of the claimant, principally because it was the intent and purpose of the act to bring border-line cases under it and to close up avenues of escape which would naturally be suggested to those seeking to evade liability under the act.

*Phillips,* 56 Wis. 2d at 580. Under the particular facts and circumstances of this case, and applying great weight deference, we conclude that LIRC reasonably interpreted Kamps' ski injury as an act "reasonably necessary for living or incidental thereto." Wis. Stat. § 102.03(1)(f), and that there is credible and substantial evidence to support that determination.

## VI.

¶ 29. Although we affirm the decision of the court of appeals which upheld LIRC's determination, we

must address language of the appellate decision which can be read as going beyond the factual and legal determinations made by LIRC. We have already addressed the court of appeals' erroneous finding that Kamps was "on call" at the time of his ski injury. *See supra*, n. 3. We also must point out the broad statement that "[a]ctivities considered usual and proper include recreation." *CBS*, 213 Wis. 2d at 290. While we agree that in some cases, including this one, recreational activities have been considered usual and proper under the statute, to the extent the court of appeals concluded as a matter of law that a traveling employee's recreational activities always fit the presumption of Wis. Stat. § 102.03(1)(f), we overrule that language.

¶ 30. We also agree with CBS' criticism of the court of appeals' adoption of LIRC's statement that "the risks of skiing were not unreasonable, nor were they unexpected or unsanctioned by CBS," *CBS*, 213 Wis. 2d at 294, insofar as the statement appears to articulate a new test for compensability under the traveling employee doctrine. This statement is not part of the presumption and exceptions thereto set out in Wis. Stat. § 102.03(1)(f), nor does our case law make the inquiry of whether a traveling employee's activity involves risks expected or sanctioned by the employer determinative of workers compensation coverage. We decline to read into the statute such a requirement.

¶ 31. Nonetheless, as demonstrated above, LIRC's interpretation that Kamps' ski injury was an act reasonably necessary for living or incidental thereto was a reasonable one, supported by credible and substantial evidence, and without reliance on the "unexpected or unsanctioned risk" inquiry.

¶ 32. Based on the foregoing, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 33. N. PATRICK CROOKS, J. (*concurring*). I agree with the mandate in this case. I write separately to address the applicable standard of review, and to state my concern with the rigid restrictions placed on a court reviewing decisions of the LIRC involving the application of Wis. Stat. § 102.03(1)(f).

¶ 34. In this case, the parties disagree regarding whether the issue presented involves a question of fact or a question of law. Kamps and LIRC argue that the issue of whether Kamps' skiing injury is an activity incidental to living in accord with Wis. Stat. § 102.03(1)(f) presents a question of fact. Conversely, CBS argues that the issue presents a question of law. The majority acknowledges this disagreement, and concludes that the issue in this case presents a question of law. *See* Majority op. at 573. In reaching this conclusion, however, the majority fails to address several cases from this court which state that LIRC's application of § 102.03(1)(f) presents a question of fact.

¶ 35. Cases from this court reviewing decisions involving Wis. Stat. § 102.03(1)(f)—the "traveling salesmen's statute"—have consistently "analyzed those questions as factual determinations that would be sustained if the [LIRC] findings were based on credible evidence or reasonable inferences." *Sauerwein v. DILHR*, 82 Wis. 2d 294, 300, 262 N.W.2d 126 (1978). *See, e.g., Tyrrell v. Industrial Comm'n*, 27 Wis. 2d 219, 222, 133 N.W.2d 810 (1965) (Affirming a decision of the LIRC, concluding that a LIRC decision under

§ 102.03(1)(f) involves a question of fact which will be affirmed if there is "*any* credible evidence or reasonable inference drawn therefrom to support the finding." (emphasis supplied)); *Hunter v. DILHR,* 64 Wis. 2d 97, 102, 218 N.W.2d 314 (1974)(same); *Lager v. DILHR,* 50 Wis. 2d 651, 658, 185 N.W.2d 300 (1971)(same); *Dibble v. Industrial Comm'n,* 40 Wis. 2d 341, 346, 161 N.W.2d 913 (1968)(same). Review of a decision of the LIRC applying § 102.03(1)(f) only presents a question of law where the facts are undisputed and only one reasonable inference can be drawn therefrom. *See, e.g., Neese v. State Medical Soc'y of Wisconsin,* 36 Wis. 2d 497, 509, 153 N.W.2d 552 (1967). Because the facts in this case are in dispute, the LIRC's conclusion regarding the application of § 102.03(1)(f) appears to be a finding of fact, based upon the previous decisions of this court.

¶ 36. The Wisconsin Legislature has afforded reviewing courts extremely limited authority in reviewing decisions of the LIRC, particularly where a court reviews findings of fact. As stated by the majority, "[t]he findings of fact made by the [LIRC] acting within its powers shall, in the absence of fraud, be conclusive." Wis. Stat. § 102.23(1)(a). Further, "[i]f the [LIRC's] order or award depends on any fact found by the [LIRC], the court shall not substitute its judgment for that of the [LIRC] as to the weight or credibility of the evidence on any finding of fact." Wis. Stat. § 102.23(6). Even where a reviewing court has determined that the LIRC's findings are not supported by credible and substantial evidence, § 102.23(6) states that a reviewing court may only remand the case to the LIRC for further development of the record.

¶ 37. Practically, the language of Wis. Stat. § 102.23 provides for review of an LIRC decision only in "very limited situations." *Goranson v. DILHR,* 94 Wis.

2d 537, 552, 289 N.W.2d 270 (1980). As stated by the majority, this restrictive statutory language has been interpreted by this court to "create a presumption that an employee who sets out on a business trip in the course of his employment performs services arising out of and incidental to his employment until he returns from his trip." *Lager*, 50 Wis. 2d at 658 (citing *Tyrrell*, 27 Wis. 2d 219; *Armstrong v. Industrial Comm'n*, 254 Wis. 174, 35 N.W.2d 212 (1948)).

¶ 38. The statutes involved, and corresponding case law from this court, virtually prohibit any meaningful judicial review of a factual decision of the LIRC, except in rare circumstances, such as fraud. The result of this body of law is "that the findings of the [LIRC] must be upheld upon appeal *even though they may be contrary to the great weight and clear preponderance of the evidence." Consolidated Papers, Inc. v. ILHR Dep't*, 76 Wis. 2d 210, 215, 251 N.W.2d 69 (1977)(emphasis supplied)(citing *R.T. Madden, Inc. v. ILHR Dep't*, 43 Wis. 2d 528, 548, 169 N.W.2d 73 (1969); *Briggs & Stratton Corp. v. ILHR Dep't*, 43 Wis. 2d 398, 404, 168 N.W.2d 817 (1969)).

¶ 39. I recognize that "[t]he legislative purpose in restricting judicial review in worker's compensation cases is to limit appeals and protracted litigation in the interest of attaining speedy justice for the employee." *Goranson*, 94 Wis. 2d at 553 (citations omitted). In an effort to expedite the interests of justice, however, I conclude that judicial review of the LIRC's application of Wis. Stat. § 102.03(1)(f) has been limited to the extent that it is essentially negated. Such limited judicial review works to insulate from close scrutiny those decisions of the LIRC that are arguably unjust as well as those that are just.

¶ 40. As stated, the majority concludes that the issue involves the LIRC's interpretation of a statute and, therefore, the appropriate standard of review is to afford great weight to the LIRC's decision. This may be a more reasoned approach than the approach previously set forth by this court in cases such as *Sauerwein, Tyrrell, Hunter, Lager,* and *Dibble,* which review decisions of the LIRC involving Wis. Stat. § 102.03(1)(f). The majority's approach would also alleviate some of my concerns about the restrictive appellate review regarding LIRC's findings of fact. *See* Wis. Stat. § 102.23. However, the majority's approach is not supported by precedent from this court.

¶ 41. Any deviation from precedent should be considered only through a thorough analysis and overview of the law as it currently exists.

> "[T]he doctrine of *stare decisis. . .*is a doctrine that demands respect in a society governed by the rule of law." *Akron v. Akron Center for Reproductive Health,* 462 U.S. 416, 419–20 (1983), *overruled on other grounds by Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833 (1992). Such "fidelity to precedent" helps to ensure that the existing law will "not be abandoned without strong justification." *State v. Stevens,* 181 Wis. 2d 410, 441, 551 N.W.2d 591 (1994)(Abrahamson, J., concurring), *cert. denied,* — U.S. —, 115 S. Ct. 2245 (1995). When existing law "is open to revision in every case, 'deciding cases becomes a mere exercise of judicial will, with arbitrary and unpredictable results.' " *Citizens Utility Bd. v. Klauser,* 194 Wis. 2d 484, 513, 534 N.W.2d 608 (1995) (Abrahamson, J. dissenting) (citation omitted). Unless there is a compelling reason to divert from its precedent, a court should abide by the precedent it has established.

*State v. Carter*, 208 Wis. 2d 142, 162, 560 N.W.2d 256 (1997)(Steinmetz, J. dissenting). Without any discussion of the existing case law, which is contrary to the standard of review advanced by the majority, the majority has failed to show a "compelling reason to divert from [this court's] precedent." *Id.*

¶ 42. In arguing that the LIRC's decision under Wis. Stat. § 102.03(1)(f) presents a question of law, CBS cites this court's decision in *Nottelson v. ILHR Dep't*, 94 Wis. 2d 106, 287 N.W.2d 763 (1980). However, the application of § 102.03(1)(f) was not at issue in *Nottelson*. Rather, *Nottelson* involved, in part, "the meaning of the legal concepts 'voluntary termination' and 'good cause attributable to the employing unit' as used in sec. 108.04(7)(a), (b), Stats." *Nottelson*, 94 Wis. 2d at 115.

¶ 43. Similarly, the majority cites *Hagen v. LIRC*, 210 Wis. 2d 12, 18, 563 N.W.2d 454 (1997), for its conclusions that the issue presented in this case is a question of law. *Hagen* involved the application of Wis. Stat. § 102.52(1). Wisconsin Stat. § 102.03(1)(f) was not addressed in this court's decision in *Hagen.*

¶ 44. In conclusion, I agree with the mandate affirming the decision of the LIRC. I write only to state that, based upon existing case law, the issue in this case presents a question of fact. I also write to state my dissatisfaction with the restrictive standard of review to which this court is bound in reviewing decisions of the LIRC, particularly those involving the application of Wis. Stat. § 102.03(1)(f).

¶ 45. I am authorized to state that Justice JON P. WILCOX joins this concurrence.