TURNER, Appellant, vs. INDUSTRIAL COMMISSION and another, Respondents.

*November 11—December 7, 1954.*

For the appellant there was a brief and oral argument by *D. V. W. Beckwith* of Madison.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

BROADFOOT, J. This action involves the interpretation of the traveling man's section of the Workmen's Compensation Act, which is as follows:

"102.03 CONDITIONS OF LIABILITY. (1) Liability under this chapter shall exist against an employer only where the following conditions concur: . . .

"(c) Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment. . . .

"(e) Where the accident or disease causing injury arises out of his employment.

"(f) Every employee whose employment requires him to travel shall be deemed to be performing service growing out of and incidental to his employment at all times while on a trip, except when engaged in a deviation for a private or personal purpose. Acts reasonably necessary for living or incidental thereto shall not be regarded as such a deviation. Any accident or disease arising out of a hazard of such service shall be deemed to arise out of his employment."

The examiner found that the plaintiff's injuries did not occur in the course of his employment and did not arise out of his employment, and that sec. 102.03 (1) (f), Stats., is not applicable. The commission, upon review, further found that the applicant was engaged in a deviation for a private or personal purpose at the time of his injury at a place where neither the duties of his employment nor acts of living called for his presence. The trial court based its decision, in part at least, on an admission by the plaintiff that he was not on official business at the time but was on personal business, and a further admission to another person who interviewed him that he would address a letter to his employer to the effect that he was on personal business at the time of the accident.

The plaintiff contends that this case is governed by the case of *Hansen v. Industrial Comm.* 258 Wis. 623, 46 N. W. (2d) 754. In that case the employee was a traveling salesman, whose duties took him to the city of Nogales, Arizona.

While there the employee invited an employee of his customer to have dinner with him in Nogales, Mexico, a twin city located just across the border. At about one-thirty the next morning Hansen, the employee, was found dead in Nogales, Mexico, a short distance south of the restaurant where he had been for dinner. In the *Hansen Case* it was held, in effect, that a traveling man is not required to eat his meals at the hotel where he is staying nor is he compelled to eat his meals within the same city, and that when it appeared that the employee went a short distance to another city for the purpose of dining it was an act reasonably necessary for living and was not a deviation for a private or personal purpose.

The two cases can be distinguished. In his application for workmen's compensation the plaintiff stated that he was injured while driving to eat dinner at Plover, Wisconsin. At the time of the hearing he testified that he did not remember whether he had eaten his dinner before the accident or whether it occurred while he was on his way to dinner. Plover is located a short distance south of Stevens Point on Highway 51. When found in his car he was several miles southeast of Plover on Highway 54, headed east toward Waupaca. In the *Hansen Case* it was established that he went to Mexico to dine and that he did dine there.

In addition, there is contained in this record the following testimony by the plaintiff:

"*Q.* Do you remember being interviewed by an investigator from my office, a Mr. Ottow? *A.* He was out to my house, yes.

"*Q.* Do you remember telling him that you were going to send a letter to the Industrial Commission to the effect that you were on personal business at the time of the accident? *A.* Yes.

"*Q.* You told him that, didn't you? *A.* Yes.

"*Q.* Did you prepare that letter? *A.* No.

"*Q.* Your wife was going to type it for you, wasn't she? *A.* That is right. I told him I would have her type it for me.

"*Q.* But it was not typed? *A.* That is correct.

"*Q.* And you told Mr. Young about the same thing, didn't you? *A.* Yes. . . .

"*Q.* Mr. Levitan has questioned you about a statement that you gave to Mr. Ottow that you were going to write to the Industrial Commission and tell them that you were on personal business. Why did you make that statement to him? What were the circumstances? Tell us, please. *A.* Well, who are you speaking of, Mr. Young or Mr. Ottow?

"*Q.* Mr. Ottow is the one I asked you about. He said that you said you were going to write a letter to the Industrial Commission, telling them you were on personal business. Why did you tell him that? *A.* I had already told Mr. Young I was going to do that. Ottow asked if I was going to send that in, and I said, 'Yes.'

"*Q.* Why did you tell Mr. Young you were going to do that? *A.* Mr. Young told me I was on personal business, that I was only in the car fifteen minutes and I couldn't possibly be going to eat at that time of the night, and that I was on personal business; so I just agreed with him.

"*Q.* You didn't tell him that from something you remembered or knew about, is that it? *A.* No.

"*Q.* When Mr. Ottow came to see you, you told him that you would send that letter in? *A.* That is right.

"*Q.* Why didn't you send that letter in? *A.* Well, I asked my wife to type it up, and she didn't type it up. She kept stalling me off. They asked a couple times, and she said she would type it up; but she didn't."

These admissions, although in part denied, are in themselves sufficient to distinguish the present case from the *Hansen Case.* The presumption in the statute applies at all times while a traveling man is on a trip. This presumption, however, disappears when any testimony rebutting it is introduced. The record here shows that the presumption was rebutted and that the findings by the examiner, the commission, and the trial court are supported by credible evidence.

*By the Court.*—Judgment affirmed.