SCHWAB and others, by guardian *ad litem,* and another, Appellants, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and others, Respondents.

*No. 53. Argued October 30, 1968.—Decided November 26, 1968.*
(Also reported in 162 N. W. 2d 548.)

For the appellants there was a brief by *Schmitt, Wurster, Nienow, Nickel & Nolan* and *Leonard F. Schmitt,* guardian *ad litem,* all of Merrill, attorneys, and *Theiler & Seroogy* of Tomahawk of counsel, and oral argument by *M. Michael Nolan.*

For the respondent Department of Industry, Labor & Human Relations the cause was argued by *Donald P. Johns,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the respondents Owens-Illinois, Forest Products Division, and The Aetna Casualty & Surety Company there was a brief by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Clayton R. Hahn* of counsel, all of Milwaukee, and oral argument by *Mr. Hahn.*

WILKIE, J. The principal issue raised on this appeal is whether there is credible evidence from which the commission could infer that at the time of his accident Charles Schwab was not performing services incidental to his employment and that his injuries and eventual death therefrom did not arise out of his employment within the meaning of sec. 102.03, Stats., of the Workmen's Compensation Act.

Applicants-appellants seek recovery under sec. 102.03, Stats., which reads in part as follows:

"(1) Liability under this chapter shall exist against an employer only where the following conditions concur:
". . .
"(c) 1. Where, at the time of the injury, the employe is performing service growing out of and incidental to his employment. Every employe going to and from his employment in the ordinary and usual way, while on the premises of his employer, or while in the immediate vicinity thereof if the injury results from an occurrence on the premises, shall be deemed to be performing service growing out of and incidental to his employment; . . . . The premises of his employer shall be deemed to include also the premises of any other person on whose premises service is being performed.
". . .
"(f) Every employe whose employment requires him to travel shall be deemed to be performing service growing out of and incidental to his employment at all times while on a trip, except when engaged in a deviation for a private or personal purpose. Acts reasonably necessary for living or incidental thereto shall not be regarded as such a deviation. Any accident or disease arising out of a hazard of such service shall be deemed to arise out of his employment."

In *Horvath v. Industrial Comm.*[1] this court, quoting from other cases, stated the familiar rule:

" '. . . When facts are not in dispute but permit the drawing of different inferences therefrom, the drawing of one such permissible inference by the commission is an act of fact finding, and the inference so derived constitutes a finding of an ultimate fact, not a conclusion of law.' "[2]

It also stated that:

" '. . . if but one inference can reasonably be drawn from such undisputed facts a question of law is presented and the finding of the commission to the contrary is not binding on the reviewing court; but, if more than one inference can reasonably be drawn, then the finding of the commission is conclusive.' "[3]

Appellants argue that the evidentiary facts in this case are undisputed and that only one inference can be drawn from these facts—namely that at the time of Schwab's accident he was performing services incidental to his employment within the meaning of sec. 102.03, Stats.

However, respondents point out that it is immaterial that the facts are undisputed so long as there is any credible evidence in the record from which a reasonable inference from among two or more such inferences can be drawn to support the findings of the department. Thus, our first task is to examine the record to determine if such evidence exists.

Individual invitations, signed by Van Tine, the personnel director, were sent to each person in Schwab's group. Van Tine testified that the purpose in inviting the men in the second group was to promote employer-employee relations, and that if these persons had been

---

[1] (1965), 26 Wis. 2d 253, 131 N. W. 2d 876.

[2] *Id.* at page 256, and cases cited therein. *See also, Prentice v. ILHR Dept.* (1968), 38 Wis. 2d 219, 221, 222, 156 N. W. 2d 482.

[3] 26 Wis. 2d at page 257, and cases cited therein.

omitted from the function, it might have been misconstrued.

There was testimony to the effect that similar gatherings had been held in the past. However, the format at these previous functions differed in that there were formal speeches on such occasions. In contrast, at this function there was only a short welcoming talk by Mr. W. B. Hobbs, Jr., the Tomahawk mill manager.

Although there was some shop talk among the employees, no business was formally discussed at the social hour or the dinner.

Several of the employees in Schwab's group testified that they felt it was important to attend these get-togethers and that the employer expected them to attend. On the other hand, Van Tine, the personnel director, made it clear that an employee would not be discriminated against for failing to attend one of these functions.

The function was considered a business expense of the employer, although those persons attending the function were not paid for their time and no deductions were made for those not attending. The chief accountant, one of the persons in Schwab's group, was reimbursed for the expense incurred in driving his automobile to the resort. However, none of the other persons in that group either asked for or were given reimbursement for their automobile expenses.

We are satisfied from our examination of the record that there is credible evidence in the record from which the commission could infer that Schwab was not rendering services to his employer on the night of June 4, 1963, even though this court might decide differently if permitted to make its own findings.

Just because an employer experiences some benefit from a social function in the form of increased morale and greater employee efficiency does not, as a matter of law, bring social and recreational pursuits within the course of one's employment. Professor Larson states that:

"Controversy is encountered also when the benefit asserted is the intangible value of increased worker efficiency and morale. Basically, the trouble with this argument is not that such benefits do not result, but that they result from every game the employee plays whether connected with his work or not. In this respect, the argument is reminiscent of the same view sometimes heard in connection with the personal comfort cases: eating, resting, and the like do indeed improve the efficiency of the employee, but this is equally true (and even more true) of the sleeping and eating which he does at home. And so, just as in the sleeping and eating cases some arbitrary time and space limitations must circumscribe the area within which the 'benefit' establishes work-connection, the recreation cases must submit to some similar limitation, since otherwise there is no stopping point which can be defined short of complete coverage of all the employee's refreshing social and recreational activities. It can be taken as the distinctly majority view that these morale and efficiency benefits are not alone enough to bring recreation within the course of employment." [4]

With regard to the commission's fact-finding role in the unlimited variety of situations that can arise at office parties, picnics and other similar functions, Professor Larson comments as follows:

"When the degree of employer involvement descends from compulsion to mere sponsorship or encouragement, the questions become closer, and it becomes necessary to consult a series of tests bearing on work-connection. The most prolific illustrations of this problem are company picnics and office parties. Among the questions to be asked are: Did the employer in fact sponsor the event? To what extent was attendance really voluntary? Was there some degree of encouragement to attend in such factors as taking a record of attendance, paying for the time spent, requiring the employee to work if he did not attend, or maintaining a known custom of attending? Did the employer finance the occasion to a substantial extent? Did the employees regard it as an employment benefit to which they were entitled as of right? Did the

---

[4] 1 Larson, *Law of Workmen's Compensation*, p. 375, sec. 22.30.

employer benefit from the event, not merely in a vague way through better morale and good will, but through such tangible advantages as having an opportunity to make speeches and awards?" [5]

Appellants cite numerous cases in support of their contention that only one inference can be drawn from the facts in this case.[6] However, in all of the cases but two, the court merely affirmed an order made by an administrative body. As to the two cases not in this category, one was not a workmen's compensation case,[7] and in the other, *State Young Men's Christian Asso. v. Industrial Comm.*,[8] this court reversed a commission order granting an award.

Thus the cases cited by appellants are not authority for this court to reverse the findings and order of the commission.

Appellants also argue that the "mutual benefit" doctrine alluded to in the *YMCA Case, supra,* applies. No doubt it does, but whether the employer received a "benefit" is a question of fact to be considered along with other facts in the record.

Also, appellants rely on *Moore's Case,*[9] which sets forth criteria to be followed in determining whether or not an injury is compensable. However, it should be noted first, that this court has not adopted the standard embracing the specific factors set forth in that case, and second, that even if these criteria were applicable, they present questions of fact for the commission.

[5] *Id.* at page 359, sec. 22.23.

[6] *See, e.g., Miller v. Keystone Appliances, Inc.* (1938), 133 Pa. Super. 354, 2 Atl. 2d 508; *Dodge v. Wm. J. Keller, Inc.* (1952), 304 N. Y. 792, 109 N. E. 2d 85; *Fagan v. Albany Evening Union Co.* (1941), 261 App. Div. 861, 24 N. Y. Supp. 2d 779; *State Young Men's Christian Asso. v. Industrial Comm.* (1940), 235 Wis. 161, 292 N. W. 324; *Boynton v. McKales* (D. C. Cal. 1956), 294 Pac. 2d 733.

[7] *Boynton v. McKales, supra,* footnote 6.

[8] *Supra,* footnote 6.

[9] (1953), 330 Mass. 1, 110 N. E. 2d 764.

Even assuming only one inference favorable to the appellants can be drawn from undisputed facts in the record, appellants must then establish that Schwab's employment required him to travel within the meaning of sec. 102.03 (1) (f), Stats.

Appellants rely on *Horvath v. Industrial Comm.*[10] and Larson to bridge this gap. However, in *Horvath* the facts were clearly different in that the injured schoolteacher was accidentally injured while driving to a special, required-overtime-work assignment. Larson states:

"If the overtime work involves a special and extraordinary trip for the benefit of the employer, it has several times been held that the trip becomes part of the service."[11]

But this statement clearly does not apply in the instant case, because here Schwab was not working overtime.

*By the Court.*—Judgment affirmed.

[10] *Supra,* footnote 1.
[11] *Supra,* footnote 4, at page 262, sec. 16.12.