WISCONSIN ELECTRIC POWER COMPANY, Plaintiff-Appellant,

v.

LABOR AND INDUSTRY REVIEW COMMISSION, Defendant-Respondent-Petitioner,

Scott OVERBYE, Defendant.

Supreme Court

No. 97–2747–FT. *Oral argument April 8, 1999.—Decided June 22, 1999.*

(Also reported in 595 N.W.2d 23.)

781

For the defendant-respondent-petitioner the cause was argued by *Stephen M. Sobota*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

For the plaintiff-appellant there was a brief and oral argument by *Lynne English*, Milwaukee.

¶ 1. N. PATRICK CROOKS, J. Petitioner, the Labor and Industry Review Commission (LIRC), seeks review of a decision of the court of appeals reversing LIRC's determination that Wisconsin Electric Power Company (WEPCO) must pay almost $750,000 in worker's compensation benefits for injuries suffered by one of its former employees, Scott Overbye (Overbye).[1] LIRC held that under the "traveling employee" statute, Wis. Stat. § 102.03(1)(f)(1995–96),[2] injuries sustained by Overbye in a car accident following his attendance at a business-related seminar in Texas occurred within the course of his employment and thus were compensable under the Worker's Compensation Act (WCA). Because we conclude that LIRC's application of § 102.03(1)(f) to the facts of this case is reasonable and is supported by findings of fact based on credible and substantial evidence, we reverse the decision of the court of appeals.

---

[1] Overbye died after the initial hearing in this case. Although the circuit court determined that he died as a result of the injuries which are the subject of this case, it appears from the record that the $750,000 figure does not include any death benefits or burial expenses which might be due under Wis. Stat. § 102.46–.50 (1995–96).

[2] All references to the Wisconsin Statutes, unless otherwise indicated, are to the 1995–96 version.

I.

¶ 2. LIRC based its award of compensation on the following findings of fact, which have not been disputed. At the time of the relevant events, Overbye was employed as an engineer for WEPCO. WEPCO sent Overbye and another WEPCO employee, Donald Kerber, to a business-related seminar in the Dallas-Fort Worth area of Texas.[3] The seminar was scheduled to run from Monday, January 30, 1995, through Friday, February 3, 1995.

¶ 3. Overbye consulted WEPCO's in-house travel agent about his travel from Milwaukee to the seminar. The agent informed Overbye that WEPCO had a travel policy under which WEPCO would reimburse Overbye for one night's lodging, meals, and transportation expenses if Overbye opted for a return flight that departed on a weekend day instead of one that left on Friday. The travel policy limited the amount of reimbursement to the difference in cost between the weekday and weekend airfares, which in Overbye's case amounted to $672. Overbye arranged to fly to Texas on Sunday, January 29, and return to Milwaukee on Sunday, February 5.[4] Using a personal credit card, Overbye also bought a ticket for his wife, Linda Overbye, to join him in Texas on Friday, February 3, and return home with him on Sunday.

---

[3] The record reflects that the seminar took place in Irving, Texas, which is located just beyond the city limits of Dallas. It also appears from the record that Fort Worth is located about 30 miles west of Dallas.

[4] We note that under the travel policy, WEPCO agreed to pay Overbye's lodging, meals, and transportation costs for Friday night only. Overbye was responsible for all other costs, including lodging, meals, and transportation costs for Saturday night.

¶ 4. Overbye and Kerber arrived in Texas for the seminar on Sunday, January 29, as planned. At noon on Friday, when the seminar concluded, Overbye and Kerber walked back to their hotel and met Linda Overbye. The trio ate lunch at a nearby restaurant and then set off for Fort Worth in the rental car that Scott Overbye and Kerber had used all week. The Overbyes and Kerber planned to do some sightseeing in Fort Worth. Approximately 21 miles from the hotel, an oncoming car crossed the median and struck the Overbyes' car, killing Linda Overbye and causing serious injuries to Scott Overbye.[5]

¶ 5. The instant action arose when Scott Overbye's guardian petitioned the Department of Workforce Development (DWD)[6] for various benefits and medical expenses under the WCA. The parties stipulated that if Overbye prevails, WEPCO, a self-insured entity for purposes of the WCA, will be liable for almost $750,000 in medical expenses.

¶ 6. Following a hearing held on February 26, 1996, an administrative law judge (ALJ) in DWD's Worker's Compensation Division ordered WEPCO to compensate Overbye, determining that Overbye's sightseeing was an act "reasonably necessary for living or incidental thereto" under Wis. Stat. § 102.03(1)(f). LIRC affirmed the ALJ's decision, adopting the ALJ's findings and order in a decision and order filed Novem-

[5] The record reveals that the accident occurred at about 2:30 p.m. As stated previously, Scott Overbye died as a result of his injuries following the hearing in this case.

[6] The petition was actually directed to the Department of Industry, Labor and Human Relations (DILHR), which was renamed the Department of Workforce Development (DWD) as of July 1, 1996. *See* 1995 Wis. Act 289, § 275; 1995 Wis. Act 27, §§ 9130(4), 9430(5).

ber 7, 1996. After summarizing the relevant statutory and case law, LIRC set forth the following analysis:

> Here, of course, the record does not establish that the applicant had deviated by drinking an unreasonable amount of alcohol, or that he was leaving the Dallas-Fort Worth metropolitan area on a side trip for personal reasons. Rather, he was simply seeking an innocent diversion while in the Dallas-Fort Worth area on a business trip. Sightseeing while on a business trip in and of itself is not a deviation, but rather reasonable recreation incidental to living.

LIRC Decision and Order, Nov. 7, 1996 at 5 [hereinafter LIRC Decision]. LIRC rejected WEPCO's argument that Overbye converted the trip into a purely personal one when he decided to stay over on Friday night and have his wife join him, stating:

> [T]he employer's position cannot convincingly counter the fact that the employer offered the choice of staying over an extra night in the first place, and benefited from that choice by saving several hundred dollars in air fare as [the travel agent] testified. True, the employer did not require the applicant to stay over and, true, the applicant did plan to spend the weekend in Dallas-Fort Worth with his wife. But it is also true that the stay-over served the clear business purpose of saving money in air fare. The applicant's choice to stay over was not "a purely personal deviation," nor can it be said that the purposes of the employer were "not in any way served" by the applicant's choice, as was the case in *Hunter* [*Hunter v. DILHR*, 64 Wis. 2d 97, 103, 218 N.W.2d 314 (1974)].

LIRC Decision at 5–6.

¶ 7. Milwaukee County Circuit Court Judge Jacqueline D. Schellinger affirmed LIRC's order on July 29, 1997. In a split decision, the court of appeals reversed. *See Wisconsin Elec. Power Co. v. LIRC*, No. 97–2747-FT, unpublished slip op. (Wis. Ct. App. Oct. 13, 1998). The majority concluded although the standard of review was great weight deference, LIRC's decision must be reversed as contrary to statutory and case law. According to the majority, LIRC improperly based its determination on the "sweeping premise" that "all innocent reasonable recreational activities during the course of a business trip are not a deviation." *Id.* at 7–8. In doing so, the majority reasoned, LIRC overlooked the language in Wis. Stat. § 102.03(1)(f) excepting "deviation[s] for a private or personal purpose" from coverage. *Id.* at 5–6, 10. The majority concluded that Overbye had manifested his intention to engage in such a deviation when he went on his sightseeing trip, and therefore, his injuries were not covered by the WCA. Judge Schudson dissented, reasoning that because LIRC's view of the facts was every bit as reasonable as the majority's view, did not clearly contradict the statute or legislative intent, and did not lack a rational basis, the great weight deference standard of review compelled the court to uphold LIRC's decision.

## II.

¶ 8. Factual findings of LIRC are conclusive as long as they are supported by credible and substantial evidence and LIRC did not act fraudulently or in a manner which exceeds its powers. *See* § 102.23(1)(a); *CBS, Inc. v. LIRC*, 219 Wis. 2d 565, 571, 579 N.W.2d 668 (1998). A court may overturn a decision made by

LIRC if it was fraudulently obtained or made while LIRC was acting outside the scope of its powers. § 102.23(1)(e). A LIRC order or award may also be set aside if it is unsupported by LIRC's findings of fact, § 102.23(1)(e), or depends upon "any material and controverted finding of fact that is not supported by credible and substantial evidence." § 102.23(6). However, "the court shall not substitute its judgment for that of the commission as to the weight or credibility of the evidence on any finding of fact." § 102.23(6).

■■■

¶ 9. The application of Wis. Stat. § 102.03(1)(f) to the facts as found by LIRC presents a question of law which this court reviews under the great weight deference standard. *CBS*, 219 Wis. 2d at 573–74. The great weight deference standard requires that we uphold LIRC's interpretation of the statute unless it is unreasonable. *Id.* at 574. *See Ide v. LIRC*, 224 Wis. 2d 159, 167, 589 N.W.2d 363 (1999). "An unreasonable interpretation of a statute by an agency is one that 'directly contravenes the words of the statute, is clearly contrary to legislative intent, or is otherwise. . .without rational basis.' " *CBS*, 219 Wis. 2d at 574 (quoting *Hagen v. LIRC*, 210 Wis. 2d 12, 20, 563 N.W.2d 454 (1997)).

## III.

¶ 10. An employer may only be held liable under the WCA for injuries which occur while an employee is "performing service growing out of and incidental to his or her employment." Wis. Stat. § 102.03(1)(c). When, as in this case, an employee's job requires travel, the "traveling employee's" statute, § 102.03(1)(f), applies. Section 102.03(1)(f) provides:

Every employe whose employment requires the employe to travel shall be deemed to be performing service growing out of and incidental to the employe's employment at all times while on a trip, except when engaged in a deviation for a private or personal purpose. Acts reasonably necessary for living or incidental thereto shall not be regarded as such a deviation. Any accident or disease arising out of a hazard of such service shall be deemed to arise out of the employe's employment.

¶ 11. This provision was enacted "following some cases where slight circumstances were apparently sufficient to show a 'deviation from employment.' " *Hansen v. Industrial Comm'n*, 258 Wis. 623, 628, 46 N.W.2d 754 (1951). *See* § 4, ch. 537, Laws of 1945. Two of these early cases are *Gibbs Steel Co. v. Industrial Comm'n*, 243 Wis. 375, 378–79, 10 N.W.2d 130 (1943), in which the court denied compensation to a traveling employee injured by a fall in a bathtub, and *Creamery Package Mfg. Co. v. Industrial Comm'n*, 211 Wis. 326, 331–32, 248 N.W. 140 (1933), in which the court held that an employee who contracted typhoid fever while traveling on business was not entitled to compensation. *See CBS*, 219 Wis. 2d at 575–76; *Neese v. State Med. Soc'y*, 36 Wis. 2d 497, 504, 153 N.W.2d 552 (1967).

¶ 12. By enacting Wis. Stat. § 102.03(1)(f), the legislature intended to provide broader protection to employees injured while on business trips. *CBS*, 219 Wis. 2d at 580; *Hansen*, 258 Wis. at 628. Section 102.03(1)(f) establishes a presumption that an employee traveling on business is performing services arising out of and incidental to his or her employment at all times until he or she returns. *CBS*, 219 Wis. 2d at

576, 579–80; *Hunter*, 64 Wis. 2d at 102. This presumption continues unless it is rebutted by evidence to the contrary. *Hunter*, 64 Wis. 2d at 102; *Dibble v. DILHR*, 40 Wis. 2d 341, 346, 161 N.W.2d 913 (1968) (quoting *Tyrrell v. Industrial Comm'n*, 27 Wis. 2d 219, 224, 133 N.W.2d 810 (1965)).

¶ 13. Two things must be proved in order to rebut the presumption. *See Hunter*, 64 Wis. 2d at 101–03; *Dibble*, 40 Wis. 2d at 346. First, it must be established that the employee deviated from his or her business trip for a private or personal purpose. *See Hunter*, 64 Wis. 2d at 103. This court has stated that "[w]hether there is a deviation depends upon whether there is established some '. . . meaningful manifestation to engage in activities purely personal to the employee. . . .' " *Id.* (quoting *Tyrell*, 27 Wis. 2d at 226). *See Hansen*, 258 Wis. at 626–27.

¶ 14. Second, it must be shown "that the deviation, although for a personal purpose, was not an act reasonably necessary for living or incidental thereto." *Hunter*, 64 Wis. 2d at 103. *See Neese*, 36 Wis. 2d at 506; *Dibble*, 40 Wis. 2d at 348. An employee's actions are reasonably necessary for living or incidental thereto as long as they "can be considered usual and proper customary conduct while living away from home." *Hunter*, 64 Wis. 2d at 103 (quoting *Neese*, 36 Wis. 2d at 506). We have explained that:

> The provisions of the statute. . .keep the salesman within the declared scope of employment while doing the usual, legitimate things incidental to daily existence. During the period of being at ease, upon leaving his last customer, he is not required to seek immediate seclusion in a hotel and remain

away from human beings at the risk of being charged with deviating from his employment.

*Hansen*, 258 Wis. at 626.[7]

## IV.

¶ 15. WEPCO contends that LIRC's application of Wis. Stat. § 102.03(1)(f) is unreasonable primarily because it ignores the statutory language excepting an employee from coverage when he or she is "engaged in a deviation for a private or personal purpose." § 102.03(1)(f). We disagree. For the reasons which follow, we hold that LIRC's application of § 102.03(1)(f) to the facts of this case is a reasonable one based on factual findings that are supported by credible and substantial evidence.

¶ 16. WEPCO contends that Wis. Stat. § 102.03(1)(f) establishes a "bright-line rule" that if a traveling employee voluntarily stays over past the conclusion of the business part of a trip, he or she engages in a personal deviation and loses protection for acts other than those reasonably necessary for daily living,

---

[7] Other cases in which this court has discussed Wis. Stat. § 102.03(1)(f) since the amendment in 1949, discussed later in the text, include: *CBS, Inc. v. LIRC*, 219 Wis. 2d 565, 579 N.W.2d 668 (1998); *Goranson v. DILHR*, 94 Wis. 2d 537, 289 N.W.2d 270 (1980); *Hunter v. DILHR*, 64 Wis. 2d 97, 218 N.W.2d 314 (1974); *City of Phillips v. DILHR*, 56 Wis. 2d 569, 202 N.W.2d 249 (1972); *Dibble v. DILHR*, 40 Wis. 2d 341, 161 N.W.2d 913 (1968); *Bergner v. Industrial Commission*, 37 Wis. 2d 578, 155 N.W.2d 602 (1968); *Neese v. State Medical Society*, 36 Wis. 2d 497, 153 N.W.2d 552 (1967); *Tyrrell v. Industrial Commission*, 27 Wis. 2d 219, 133 N.W.2d 810 (1965); *Richardson v. Industrial Commission*, 1 Wis. 2d 393, 84 N.W.2d 98 (1957); and *Turner v. Industrial Commission*, 268 Wis. 320, 67 N.W.2d 392 (1954).

such as bathing, sleeping, and eating. According to WEPCO, this rule embodies "the obvious legislative intent of the traveling employee provision." WEPCO's Br. at 13.

¶ 17. WEPCO's "bright-line rule" is contradicted by the plain language of the traveling employee's statute. Wisconsin Stat. § 102.03(1)(f) provides, "Acts reasonably necessary for living *or incidental thereto* shall not be regarded as such a deviation." The legislature inserted the words "or incidental thereto" into § 102.03(1)(f) when it redrafted the statute in 1949 after some cases had restrictively interpreted the acts covered by the traveling employee's statute. *See* § 1, ch. 107, Laws of 1949. *See, e.g., Armstrong v. Industrial Comm'n*, 254 Wis. 174, 179–80, 35 N.W.2d 212 (1948) (holding that evidence that an employee could only have drowned if he had walked a short distance off of his course was sufficient to rebut the presumption of coverage under Wis. Stat. § 102.03(1)(f)). LIRC persuasively argues in its brief that by adding "or incidental thereto," the legislature could only have intended further to expand the protection offered by the WCA to traveling employees. WEPCO's proposed "bright-line rule," however, reads the words "or incidental thereto" right out of the statute.

¶ 18. Further, adoption of the suggested "bright-line rule" would disregard the legislative intent of Wis. Stat. § 102.03(1)(f).[8] As we have already explained, § 102.23(1)(f) was created "to grant traveling employees broader protection for after-hours activities when

[8] WEPCO cites no authority in support of its contention that the "bright-line rule" manifests "the obvious legislative intent" of Wis. Stat. § 102.03(1)(f), and our research did not uncover any.

their employment requires them to be away from home." *CBS*, 219 Wis. 2d at 577. *See Neese*, 36 Wis. 2d at 508; *Hansen*, 258 Wis. at 628. The WCA as a whole is to be "liberally construed to include all services that can be reasonably said to come within it." *CBS*, 219 Wis. 2d at 580 (quoting *Black River Dairy Products, Inc. v. DILHR*, 58 Wis. 2d 537, 544, 207 N.W.2d 65 (1973)). Accordingly, we reject WEPCO's proposed rule as contrary to the statute and the legislative intent which underlies it.

¶ 19. Next, WEPCO argues that we should reverse LIRC's award because LIRC based its decision upon a "sweeping conclusion that 'innocent, reasonable, recreational activities during the course of a business trip are not a deviation.' " WEPCO's Br. at 28 (quoting LIRC Decision at 3). WEPCO claims that this court overruled "such sweeping generalization" in *CBS*.[9] WEPCO's Br. at 28.

¶ 20. It is true that LIRC stated its conclusions in terms that were not altogether narrow.[10] It does not necessarily follow, however, that we should overturn LIRC's decision. In *CBS*, we affirmed a decision of the court of appeals that spoke in equally general terms, overruling only the generalized language itself. *See CBS*, 219 Wis. 2d at 583.

[9] WEPCO bases this argument on the analysis employed by the majority of the court of appeals. *See* WEPCO's Br. at 28 (citing *Wisconsin Elec. Power Co. v. LIRC*, No. 97–2747-FT, unpublished slip op. at 7–8 (Wis. Ct. App. Oct. 13, 1998)).

[10] Specifically, LIRC stated, "If a generalization is possible from the case law, it is that innocent, reasonable recreational activities during the course of a business trip are not a deviation," LIRC Decision at 3, and, "Sightseeing while on a business trip in and of itself is not a deviation, but rather reasonable recreation incidental to living." LIRC Decision at 5.

¶ 21. As we stated in *CBS*, our focus upon review is the reasonableness of LIRC's application of Wis. Stat. § 102.03(1)(f) to the facts of the case. *See CBS*, 219 Wis. 2d at 577, 579. We stressed that whether an action is reasonably necessary for living or incidental thereto depends upon the particular facts and circumstances involved in the case at bar, not on generalized synopses of our conclusions in past cases involving different factual scenarios. *See CBS*, 219 Wis. 2d at 577, 579. *See, e.g., City of Phillips v. DILHR*, 56 Wis. 2d 569, 579, 202 N.W.2d 249 (1972). We are to uphold LIRC's decision unless it "directly contravenes the words of the statute, is clearly contrary to legislative intent, or is otherwise. . . without rational basis." *CBS*, 219 Wis. 2d at 574 (quoting *Hagen*, 210 Wis. 2d at 20).

¶ 22. LIRC's decision in this case cannot be labeled unreasonable in any way. LIRC considered and quoted all of the language in Wis. Stat. § 102.03(1)(f). LIRC correctly recognized that under the statutory presumption, a traveling employee's injury is compensable unless it resulted from an act which was both for "a personal purpose" and "not reasonably necessary for living or incidental thereto." LIRC Decision at 3. LIRC clearly found that the trip was not "a purely personal deviation," *id.* at 6, but because it also found that Overbye's sightseeing trip was an act "incidental to" living, it did not embark upon an extensive evaluation of whether the trip was for a "personal purpose," nor was it required to do so.[11] Consequently, LIRC did not

---

[11] Also, we note that LIRC adopted the findings and order of the ALJ, who stated that "[a]pplicant's counsel concedes in its brief that Overbye's intended trip to Fort Worth was a deviation from the purposes of the business trip," and determined that compensability turned on the second question, whether

"directly contravene[ ] the words of the statute" by engaging in a limited discussion of the purpose of the trip.

¶ 23. LIRC's decision is plainly consistent with legislative intent. LIRC's decision to grant coverage in this case advances the legislative intent to provide broad coverage to traveling employees injured while away from home. *See CBS*, 219 Wis. 2d at 580. As we explained previously, it is WEPCO's suggested "bright-line rule" which contravenes the legislative intent underlying Wis. Stat. § 102.03(1)(f).

¶ 24. Finally, LIRC's decision does not lack a "rational basis." *CBS*, 219 Wis. 2d at 574 (quoting *Hagen*, 210 Wis. 2d at 20). LIRC reached a sensible conclusion based upon its findings as to the specific facts and circumstances of this case. LIRC's conclusion that Overbye's sightseeing was a reasonable activity incidental to living follows logically from factual findings which are supported by credible and substantial evidence. The evidence shows that WEPCO had a travel policy under which it benefited financially from Overbye's choice to stay in Texas on Friday night.[12]

Overbye's sightseeing was an act "reasonably necessary for living or incidental thereto." ALJ's Findings and Order, May 17, 1996 at 4.

[12] In previous cases, we have considered whether the employer and the employee both derived a benefit from an employee's actions in determining whether an employee was injured while "performing service growing out of and incidental to his or her employment." Wis. Stat. § 102.03(1)(c), (f). *See Ide v. LIRC*, 224 Wis. 2d 159, 171, 589 N.W.2d 363 (1999); *Schwab v. DILHR*, 40 Wis. 2d 686, 693, 162 N.W.2d 548 (1968); *State YMCA v. Industrial Comm'n*, 235 Wis. 161, 163–64, 292 N.W. 324 (1940). *But see CBS*, 219 Wis. 2d at 576–77. In *Schwab*, we

The injury occurred on Friday afternoon, before the benefit to WEPCO had disappeared. In addition, LIRC found that Overbye had only taken a trip within the Dallas-Fort Worth metropolitan area. There is no evidence of any illegal motive or behavior on Overbye's part. It is entirely reasonable for LIRC to conclude from these facts that Overbye's sightseeing was reasonable recreation incidental to living, especially in light of our recent conclusion in *CBS* that skiing could, under certain facts, qualify as such.[13] WEPCO could hardly expect Overbye to "seek immediate seclusion in a hotel and remain away from human beings at the risk of being charged with deviating from his employment." *Hansen*, 258 Wis. at 626.

██

¶ 25. Because LIRC's decision comports with the language of Wis. Stat. § 102.03(1)(f), is consistent with legislative intent, and represents a rational conclusion based upon factual findings supported by credible and substantial evidence, we conclude that LIRC's determination is a reasonable one which must be upheld.[14] We

referred to this consideration as the "mutual benefit doctrine." *Schwab*, 40 Wis. 2d at 693.

[13] WEPCO attempts to distinguish *CBS* from this case on its facts, pointing out that the employee in *CBS* was injured while skiing in the middle of the business trip, before his business purpose for being there had disappeared, whereas Overbye's injuries occurred on a personal trip commenced after the conclusion of the business part of the trip. This argument ignores LIRC's finding that because WEPCO continued to benefit from Overbye's presence in Texas through Friday night under its travel policy, the business purpose of the trip had not concluded. *See* LIRC Decision at 5–6.

[14] The court of appeals concluded that LIRC improperly based its decision upon language in the court of appeals' decision in *CBS*, which this court subsequently overruled. *See* slip

are not faced with the question of whether it might be possible to reach another reasonable conclusion under the facts of this case. Rather, as Judge Schudson recognized and we attempted to make clear in *CBS*:

> In cases where the evidence is evenly balanced and an inference may be drawn one way as easily as another, the scale should be turned in favor of the claimant, principally because it was the intent and purpose of the [WCA] to bring border-line cases under it and to close up avenues of escape which would naturally be suggested to those seeking to avoid liability under the [WCA].

*CBS*, 219 Wis. 2d at 582 (quoting *City of Phillips*, 56 Wis. 2d at 580). Under the great weight deference standard of review, it is not the role of a reviewing court to second-guess a reasonable interpretation of a statute by an administrative agency. *See Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 663, 539 N.W.2d 98 (1995).

## V.

¶ 26. Counsel for LIRC aptly noted in response to questioning at oral argument that this case "pushes the envelope" of the kinds of behavior by traveling employees which might be considered incidental to living under Wis. Stat. § 102.03(1)(f). We conclude, however, that LIRC's application of § 102.03(1)(f) to the facts of this case is a reasonable one which is supported

op. at 7. However, LIRC clearly cited *its own* decision in *CBS*, which was later upheld by this court. *See* LIRC Decision at 4–5. *See also CBS*, 219 Wis. 2d at 583–84. In deciding this case on November 7, 1996, it would have been impossible for LIRC to have relied upon the court of appeals' decision in *CBS*, which came out in 1997. *See CBS Inc. v. LIRC*, 213 Wis. 2d 285, 570 N.W.2d 446 (Ct. App. 1997).

796

by findings of fact based on credible and substantial evidence. Consequently, we reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.